Clinton MANGES and Duval County Ranch Company, Appellants,

v.

**FREER INDEPENDENT SCHOOL DISTRICT, et al., Appellees.**

No. 16776.

Court of Appeals of Texas, San Antonio.

April 20, 1983.

Rehearing Denied June 28, 1983.

Richard Banks, Austin, Mike Hatchell, Tyler, for appellants.

T. Kellis Dibrell, San Antonio, Homero C. Canales, Alice, J.A. Canales and G. Rudolph Garza, Jr., Corpus Christi, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

OPINION

CANTU, Justice.

This is an *ad valorem* tax suit. Appellees, various taxing authorities, sued appellants for delinquent *ad valorem* taxes allegedly due for tax years 1977, 1978 and 1979. Trial was to the court and judgment was rendered in favor of the taxing authorities for delinquent taxes, penalties, interest and attorney fees.

Appellants have duly perfected their appeal and raise eight points of error which may be conveniently divided into three general groups. The first group challenges the validity of taxes assessed, levied, and sought to be collected by Freer Independent School District. The second group challenges the award of attorney fees and the last group challenges the validity of the foreclosure liens granted by the judgment.

There is no dispute concerning the dollar amount of taxes involved. The issues before us are thus, for the most part, delineated by stipulations between the parties. Other issues are found in the decretal portions of the judgment.

The facts as stipulated and developed at trial governing appellants' challenge to the validity of taxes levied, assessed and sought to be collected by Freer Independent School District reflect the following.

*The History of Freer Independent School District*

On August 14, 1976, the qualified voters residing within the incorporated limits of the City of Freer, Texas, voted to establish a municipal school district[1] pursuant to Tex.Educ.Code Ann. § 19.161 (Vernon 1972). The proposed municipal school district previously constituted a part of the existing Benavides Independent School District. The ordinance of the Freer City Council, dated August 26, 1976, shows that after receiving a petition signed by 50 qualified voters of the city,[2] and within 20 days of the receipt of the petition, the voters approved the creation of the Freer Municipal School District by a vote of 807 for, and 10 against the proposition.

On December 9, 1976, the Freer City Council passed another ordinance which, pursuant to § 19.161, created the Freer Municipal School District. The Board of Trustees for the new district was named by an ordinance of the city council on that same day. Although the record does not show it, the parties have stipulated that the only bonded indebtedness incurred by the City of Freer if it did, was that pro rata share of indebtedness of the Benavides School District at the time Freer Municipal Indepen-

---

1. A municipal school district is classified as an independent school district under the Texas Education Code. *See* Tex.Educ.Code Ann. § 19.163 (1972).

2. There is no petition by 50 voters found in the record. The only petition found in the record concerns both the creation of Freer Independent School District and the boundary extension thereof. This petition is dated December 21, 1976.

dent School District was carved out of the Benavides Independent School District.[3]

On December 21, 1976, the Freer City Council, at the request of the new school board, voted to extend the boundaries of the new district for school purposes only. *See* Tex.Educ.Code Ann. § 19.164 (Vernon 1972). The parties stipulated that a petition signed by the majority of voters in the affected area was submitted to the city council on December 15, 1976. The extension of the boundaries of Freer Independent School District on December 21, 1976, brought defendants Manges' and Duval County Ranch Company's property under the taxing jurisdiction of the Freer Independent School District whereas it had previously been within the taxing jurisdiction of the Benavides Independent School District.

The creation of the new district involved property which constituted only a fractional part of the Benavides Independent School District and did not affect the continuing operation of the Benavides Independent School District. The record does not indicate what effect the creation of the new district had on the existing bonded indebtedness of the Benavides Independent School District. The record does show, however, that the August 1976 election only dealt with the acquisition of exclusive control over the school system, and did not speak to whether the bonded indebtedness of the old district would be assumed by the new district. Nor did the election results speak to any authorization to levy maintenance taxes within the new district. *See* Tex. Const. art. VII, § 3.

When the Freer City Council, by ordinance, extended the boundaries of Freer Municipal School District, it provided that the annexed area bear its pro rata share of any school taxes and of "... any obligation owed by Freer Independent School District...." There is no evidence, one way or the other, that the voters of Benavides authorized a levy of taxes pursuant to Article VII, § 3 of the Constitution. However,

appellants do not challenge Benavides' taxing authority. The parties also stipulated that while Benavides Independent School District voted to incur bonded indebtedness, the Freer Independent School District has never submitted to the voters of its district, either as originally constituted or as expanded, the question of authorization to assess, levy and collect taxes for the maintenance of the new district or for retiring any bonded indebtedness.

Appellants Manges and the Duval County Ranch Company filed a first amended answer alleging a legal defense to the foreclosure of the Freer Independent School District's tax liens. The defense was that "... Freer Independent School District has no legal authority to levy or collect *ad valorem* taxes from these defendants as there has not been any election held since the plaintiff was originally and initially organizaed [sic] as a school district in which the voters within the school district voted to authorize the plaintiff to tax property for any purposes." The argument advanced by appellants is that Tex. Const. art. VII, § 3 makes an election authorizing a school district maintenance tax mandatory and that without such an election, any attempt to levy, assess, or collect such taxes is impermissible.

At the trial on the merits appellees offered the tax rolls into evidence, properly predicated by testimony from the tax assessors and the consultants who keep records of mineral interests for taxing purposes. Having established a *prima facie* case, and after offering some testimony as to attorney fees, appellees rested.

The only evidence offered by the appellants was the testimony of Jack Shires, the president of the board of trustees of Freer Independent School District. Shires predicated the answers to appellants' request for written interrogatories which were admitted, over objection, for the purpose of showing the mechanics in the creation of the new district.

---

**3.** *See* Tex.Educ.Code Ann. § 19.162(i) (Vernon 1972), "... city or town shall levy and cause to

be assessed ... taxes to pay interests on such bonds."

The appellants have never challenged the validity of the intervenors' tax, nor do they dispute the assessment values of any of the taxing entities. Their sole contention, as set out in their first amended answer, argued at trial, and on appeal, is that Freer Independent School District had no power to tax because there was no election authorizing the assessment, levying and collection of the maintenance tax.

The trial court rejected the defendants' theory of the case and entered judgment in favor of all the taxing authorities. The judgment recites that appellees recover from Clinton Manges personally, the amount of $148,530.86 and from the Duval County Ranch Company the sum of $346,-555.57 as delinquent taxes. The judgment further establishes a bulk lien *in solido* for the combined amounts and orders a foreclosure in bulk and in solido for that amount.

A motion for new trial complaining of most of the errors presented on appeal was apparently overruled by operation of law as no order appears in the record. A request for findings of fact and conclusions of law was filed, but no findings appear in the record.

### Legality of Formation of Freer Independent School District

Appellants' first three points of error attack the authority of Freer Independent School District to tax at all, since the record indicates that the qualified voters of the district never voted approval of the tax. According to appellant, such an election is required under Tex. Const. art. VII, § 3.[4]

Article VII, § 3 is a "... rather patched and overly cobbled enactment" giving local school districts the authority to levy *ad valorem* taxes. *Shepherd v. San Jacinto Junior College District,* 363 S.W.2d 742 (Tex.1963). The section in question requires the legislature to provide revenue for the benefit of public free schools. Such revenues are to be provided from the state occupation taxes, poll tax, and if those funds are insufficient, "... there shall be levied and collected an annual *ad valorem* state tax not to exceed thirty-five cents ($.35) on the one hundred dollars ($100.00) valuation." If this amount is not sufficient, the section continues, the legislature is au-

---

4. Tex. Const. Art. VII, § 3 provides:

Taxes for benefit of schools; school districts

Sec. 3. One-fourth of the revenue derived from the State occupation taxes and poll tax of one dollar on every inhabitant of the State, between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools; and in addition thereto, there shall be levied and collected an annual ad valorem State tax of such an amount not to exceed thirty-five cents on the one hundred ($100.00) dollars valuation, as with the available school fund arising from all other sources, will be sufficient to maintain and support the public schools of this State for a period of not less than six months in each year, and it shall be the duty of the State Board of Education to set aside a sufficient amount out of the said tax to provide free text books for the use of children attending the public free schools of this State; provided, however, *that should the limit of taxation herein named by insufficient the deficit may be met by appropriation from the general funds of the State and the Legislature may also provide for the formation of school district by general laws; and all such school districts may embrace parts of two or more counties, and the Legislature shall be authorized to pass laws for the assessment and* collection of taxes in all said districts and for the management and control of the public school or schools of such districts, whether such districts are composed of territory wholly within a county or in parts of two or more counties, and the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts, nor to independent or common school districts created by general or special law. [Emphasis added]. As amended Aug. 14, 1883, proclamation Sept. 25, 1883; Nov. 3, 1908, proclamation Feb. 2, 1909; Aug. 3, 1909, proclamation Sept. 24, 1909; Nov. 5, 1918; Nov. 1920; Nov. 2, 1926, proclamation Jan. 20, 1927.

thorized to either appropriate money from the general fund, or "... the legislature may authorize additional *ad valorem* tax ... provided that the majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such a tax...."

The construction appellants suggest that we adopt would be that Freer Independent School District, which validly split off from Benavides Independent School District, holding an election which authorized them to create the new district, but silent as to the authority to levy taxes to support and maintain the new district, results in an Independent School District which has no power to assess, levy and collect taxes. The judgment granting the foreclosure of a lien in favor of Freer Independent School District, is therefore erroneous, appellants argue, because the district has no authority to tax under the constitution.

Subject to the following discussion of appellees' counterpoints, we feel that the governing case law and the history of article VII, § 3, support appellants' position.

 The major premise of our holding is that "... [a]n Independent School District has no inherent or implied authority to levy taxes for the maintenance of schools...." *Wingate v. Whitney Independent School District,* 129 S.W.2d 385 (Tex.Civ.App.—Waco 1939, no writ). The authority to levy taxes must arise from an affirmative grant of power found in the constitution. *Adams v. Miles,* 35 S.W.2d 123 (Tex.Comm.App.1931); *Crabb v. Celeste Independent School District,* 105 Tex. 194, 146 S.W. 528 (1912); *City of Fort Worth v. Davis,* 57 Tex. 225 (1882); *see also Shepherd v. San Jacinto Junior College District, supra* (wherein the court discusses the legislature's power to levy *ad valorem* taxes.) The affirmative, *and exclusive,* grant of power allowing a school district to levy the taxes in question is article VII, § 3 of the Texas Constitution. *Crabb v. Celeste Independent School District, supra.* And, as was the case in *Young v. Edna Independent School District,* 34 S.W.2d 857 (Tex.Comm. App.1931) (opinion adopted);

Finally, we hold that under the provisions of art. VII, § 3 of our State Constitution no tax can be lawfully levied or collected on any property of any school district in this State unless such taxes have been duly voted on such territory as required by the constitutional provisions hereinabove referred to.

34 S.W.2d at 860.

The rationale leading us to this conclusion is indirectly supported by case law as well as the direct authorities cited above. In *Crabb v. Celeste Independent School District, supra,* a § 3 election was held and the qualified voters within the school district approved the tax. Subsequent to this election the district annexed additional lands and levied tax on the newly annexed land. The court held that the exclusive mode of raising funds by levying *ad valorem* taxes is set out in article VII, § 3 of our Constitution, that is by holding an election wherein two-thirds of the tax-paying voters approve the tax. (The section was changed in 1908 to require only a majority of the voter's approval). If the only way to levy such a tax requires an election, to allow the district to tax property in the annexed area where no election had been held, the court reasoned, would be allowing the district to do indirectly what they had no power to do directly. That two-thirds of the qualified voters in the newly elected district had signed a petition for annexation, could not save the tax:

> ... for the reason [that] citizens, residing in such district are entitled, under the constitution, to have this issue determined by ballot, with its safeguards of ascertaining the qualification of the electors, its secrecy so essential to a free and untrammeled expression of opinion, freedom from intimidation and persuasion at the time of voting and many other substantial rights growing out of the regulation of the polls.

146 S.W. at 528.

The Texas courts have stood firmly behind the *Crabb* rationale and invalidated several taxes not in conformity with art. VII, § 3. *See Pyote Independent School*

*District v. Dyer,* 34 S.W.2d 578 (Tex.Comm. App.1931) (merger into common district without tax election); *Bigfoot Independent School District v. Genard,* 116 S.W.2d 804 (Tex.Civ.App.—San Antonio 1938, aff'd; 133 Tex. 368, 129 S.W.2d 1213) (consolidation of two districts without tax election); *City of Eaglelake v. Lakeside Sugar Refining Co.,* 144 S.W. 709 (Tex.Civ.App.—San Antonio 1912, writ ref'd) (extension of boundaries for school purpose without election). As discussed infra, a constitutional amendment was passed to obviate the need for elections when a school district changes its boundaries.

▪ Finally, in accordance with a fundamental rule for construction of constitutional amendments, we must presume the language therein "... to have been carefully selected and the words used are to be interpreted as the people generally understood them." *Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808, 813 (1940). And we must, according to another rule of construction, discover the general spirit of the times, and the prevailing sentiments of the people at the time the provision was enacted. *Shepherd v. San Jacinto Junior College District, supra,* Chief Justice Calvert dissenting.

Fortunately, the history of article VII, § 3 has been thoroughly researched by the Supreme Court and set out in *Shepherd, supra.* According to the majority in that case, the imposition of school taxes was a hotly debated topic of the constitutional convention of 1875. In a lengthy footnote, Justice Norvell cited McKay, *Debates in the Texas Constitutional Convention of 1875,* for the proposition that the school tax was the main expense and burden which induced the makers to hold the convention. A proposition was advanced to the 1875 convention to permit local taxation for school purposes, but rejected. It was not until 1883 that the provision in question was enacted. The election requirement has remained unchanged through five subsequent amendments of article VII, § 3.

The history of the 1883 amendment is set out by the dissenters in *Shepherd.* As a result of the Supreme Court holding in *City of Fort Worth v. Davis, supra,* invalidating legislative authorization of the power to tax for school purposes by local government units, at the next called legislature the provision under discussion was submitted as a constitutional amendment. The inclusion, in clear and unambiguous terms, of the necessity to hold an election, surely indicates that the concerns expressed at the convention of eight years earlier, were provided for. Our construction, therefore, seems in conformity with the prevailing sentiment at the time of enactment, that *ad valorem* property taxation has traditionally and rightly been a closely guarded privilege granted only when those whose lands shall bear the tax have approved by popular election the levy of the *ad valorem* tax.

By way of counterpoints appellees advance several arguments relying on statutory and constitutional provisions, which in their opinion, either validate or grant the power to levy the taxes in question. We shall deal with the constitutional arguments first.

Appellees rely on article XI, § 4 of the Constitution as an affirmative grant of power allowing levy *ad valorem* taxes without an election.[5] Appellees argue that article XI, § 4, giving cities and towns the power to levy *ad valorem* taxes, together with Tex.Rev.Civ.Stat.Ann. art. 1027 (Vernon 1963),[6] which states that the article XI,

---

**5.** Tex. Const. Art. XI, § 4 provides:
 Sec. 4. Cities and towns having a population of five thousand or less may be chartered alone by general law. They may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful for any one year which shall exceed one and one-half percent of the taxable property of such city; and all taxes shall be collectible only in current money, and all licenses and occupa-

tion taxes levied, and all fines, forfeitures and penalties accruing to said cities and towns shall be collectible only in current money. As amended Aug. 3, 1909, proclamation Sept. 24, 1909; Nov. 2, 1920.

**6.** Tex.Rev.Civ.Stat.Ann. art. 1027 (Ad valorem tax) provides:
 The governing body of any incorporated city or town having a population of not more than

§ 4 taxing power given to a municipality includes the power to tax for "... building sites and buildings for free public schools and institutions of learning *within* their limits ..." give them the power to levy the tax in question. (Emphasis added). Since Freer Independent School District is a municipal school district, appellees argue, it has the power to levy and assess the taxes in question under article XI, § 4. We perceive a weakness in this argument.

The weakness is that both article 1027 and the case law construing it, limit the power to levy *ad valorem* taxes under article XI to the area of the municipal school district which is co-extensive with the boundaries of the municipality. The problem has arisen in the past because of the difference in the tax rate allowed under article VII and that under article XI. In *Cummins v. Gaston,* 109 S.W. 476 (Tex.App. 1908, err. ref'd), the court recognized two distinct types of municipal school districts. The two types of districts are those where a

municipality and contiguous territory are included, and those where the boundaries of the district are co-extensive with the municipality. Chief Justice Presslar, writing for the majority, stated that the former were governed by the tax limits of article VII and the latter by article XI.

In the case before us, the parties have stipulated that Freer Independent School District includes territory beyond the municipal boundaries. They also have stipulated that the lands of the defendants are beyond the boundaries of the municipality. We hold, upon the strength of *Cummins v. Gaston, supra,* and the language of article 1027 itself, that the Freer Independent School District may not levy *ad valorem* maintenance taxes for school purposes against appellant's lands under the aegis of article XI, § 4.

The next argument advanced by appellee is that article VII, § 3b is the controlling constitutional provision. Article VII, § 3b, adopted in 1962,[7] deals with the necessity of

---

five thousand inhabitants, shall have power, by ordinance, to levy and collect an annual ad valorem tax of not exceeding one and one-half percent on the one hundred dollars valuation of taxable property within such city or town for the erection, construction or purchase of public buildings, streets, sewers and other permanent improvements *within the limits of such city or town.* Within the meaning of this article shall be included building sites and buildings for public free schools and institutions of learning within those cities and towns which have or may assume the exclusive control and management of public free schools and institutions of learning within their limits. Acts 1885, p. 99; G.L. vol. 9, p. 719; Constitutional Amendment 1921. (Emphasis added).

7. Tex. Const. art. VII, § 3b provides:
 Independent school districts and junior college districts; taxes and bonds; changes in boundaries
 Sec. 3–b. No tax for the maintenance of public free schools voted in any independent school district and no tax for the maintenance of a junior college voted by a junior college district, nor any bonds voted in any such district, but unissued, shall be abrogated, cancelled or invalidated by change of any kind in the boundaries thereof. After any change in boundaries, the governing body of any such district, without the necessity of an additional election, shall have the power to assess, levy and collect ad valorem taxes on all taxable property within the boundaries of the district

as changed, for the purposes of the maintenance of public free schools or the maintenance of a junior college, as the case may be, and the payment of principal of and interest on all bonded indebtedness outstanding against, or attributable, adjusted or allocated to, such district or any territory therein, in the amount, at the rate, or not to exceed the rate, and in the manner authorized in the district prior to the change in its boundaries, and further in accordance with the laws under which all such bonds, respectively, were voted; and such governing body also shall have the power, without the necessity of an additional election, to sell and deliver any unissued bonds voted in the district prior to any such change in boundaries, and to assess, levy and collect ad valorem taxes on all taxable property in the district as changed, for the payment of principal of and interest on such bonds in the manner permitted by the laws under which such bonds were voted. In those instances where the boundaries of any such independent school district are changed by the annexation of, or consolidation with, one or more whole school districts, the taxes to be levied for the purposes hereinabove authorized may be in the amount or at not to exceed the rate theretofore voted in the district having at the time of such change the greatest scholastic population according to the latest scholastic census and only the unissued bonds of such district voted prior to such change, may be subsequently sold and delivered and any voted, but unissued, bonds of other school districts

holding an election when a school district changes its boundaries. The section was adopted to deal with situations arising in cases like *Crabb v. Celeste Independent School District, supra,* where a school district changes its boundaries through consolidation, merger, annexation, etc. The comment to the 1962 amendment points out that the amendment was intended to validate taxes levied in the rapidly growing Dallas School District.

■ While it seems that Freer Independent School District had the power to extend their boundaries to include lands not within the corporate limits of their city, and under § 3b to provide that the newly acquired lands shall bear their pro rata share of the bonded indebtedness of the district as it existed prior to the extension of boundaries, we fail to see how the exercise of such powers vitiates the art. VII, § 3 requirement of an election before any taxes are levied. The taxes and bonded indebtedness referred to in art. VII, § 3b are ones which have been voted. In the case before us, it is stipulated that no art. VII, § 3 election was ever held in the district as it existed prior to extension of its boundaries or after such extension. We find, therefore, that Freer's authority to levy and assess the taxes in question cannot arise from art. VII, § 3b of the Constitution.

Appellees argue persuasively that § 3b not only does away with the necessity for an election, but that for us to hold Freer (Municipal) Independent School District had no power to raise funds through taxation in order to retire pro rata share of the Benavides Independent School District assumed when the new district was formed, is in and of itself contrary to the provisions of § 3b. The prohibition against abrogation of bonded indebtedness, appellees argue, was violated because when Freer Independent School District split off from Benavides Independent School District, the latter had a change of boundaries. As a result of the change in boundaries of Benavides Independent School District, a substantial amount of the property in Benavides Independent School District passed to Freer Independent School District. And now, because of Freer Independent School District's failure to hold an election when it assumed control of its schools, the bonded indebtedness of that land lying within the new school district, including the land of the appellants, is completely abrogated.

While the appellees' argument has merit, it ignores the thrust of appellants' contentions. The appellants do not question the authority of Benavides to tax the property in the new district, nor do they question whether Freer Independent School District has assumed the obligations of the Benavides Independent School District. Nor are appellants concerned that Freer Independent School District may have no funds available to retire the bonded indebtedness because of the constitutional deficiency in its power to tax. Unfortunate results are sometimes unavoidable. *See Love v. Rockwall Independent School District, supra.* But such matters are not before us. The sole question presented to us is whether the judgment of the trial court allowing foreclosure of the tax liens against defendants' land is erroneous because Freer Independent School District had no power to levy taxes without complying with the constitutional requirements. Thus whether either school district has violated the § 3b prohibition of abrogation of bonded indebtedness does not concern us here and we need not pass on the effect of § 3b on the outstanding pro rata share of the bonded indebtedness of Benavides Independent School District.[8]

■ Appellees next argue that any irregularities in the levying of the tax were cured by Tex.Rev.Civ.Stat.Ann. art. 7057g

---

involved in such annexation or consolidation shall not thereafter be issued. Adopted Nov. 6, 1962. Amended Nov. 8, 1966.

8. We will, however, take note that it appears that the Freer Independent School District or the Benavides Independent School District are not without remedy. *See Pyote Independent School District v. Dyer, supra.*

(Vernon Supp.1982).[9] That statute cures all tax levies which are unenforceable "... because not made in strict compliance with the form and manner required by statute or because of any other defect *which may be cured by the legislature.*" (Emphasis added.) Since appellants have alleged a constitutional deficiency, and not a failure of strict compliance with a statute, the constitutional deficiency must be one which the legislature can cure before appellees can find refuge under this statute. It is a well settled matter of law that the legislature does not have the power to validate what they did not have the power to authorize. *Bigfoot Independent School District v. Genard, supra.* In the *Bigfoot* case, this court held that when two school districts were consolidated into one new district an election must be held before any tax is levied in the new district. The court addressed the effect of curative legislation on the constitutionally deficient tax. Since the legislature could not authorize an *ad valorem* tax which would be imposed contrary to constitutional provisions, the court held the legislature had no power to cure the defects. *See also* 140 A.L.R. 960; 2 *Cooly's Const. Lim.,* 8th ed. 791. The defect in the tax in the case before us therefore, could not be cured by legislative enactment.

■ Appellees next advance the proposition that appellants' attack on the taxing power of Freer Independent School District is a collateral attack on the validity of the corporate existence of the district, and therefore, the proper remedy is a *quo warranto* proceeding. We disagree.

We note, as did the court in *Derrick v. County Board of Education of Donley County,* 374 S.W.2d 259 (Tex.Civ.App.—Amarillo 1963, no writ), that our Rules of Civil Procedure specifically provide that the remedy of *quo warranto* must be construed as being cumulative of any other existing remedies. Tex.R.Civ.P. 782. Our Supreme Court in speaking of *quo warranto* has stated that *quo warranto* is not an exclusive remedy. *McAllen v. Rhodes,* 65 Tex. 348 (1886).

The contentions raised by appellees on this subject are negated by *Parks v. West,* 102 Tex. 11, 111 S.W. 726 (1908). In that case it was urged, as here, that to challenge the validity of the school districts' *ad valorem* taxes because no election was held amounted to a collateral attack on the corporate existence of the district itself. In *Derrick v. County Board of Education of Donley County, supra,* the court set out the oft-quoted portion of the decision in *Parks v. West.* The court quoted:

'... the attack of the plaintiffs is not merely upon the corporate existence of the district, *but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that although the reason they assign for the lack of power may also go to the right of the district to exist under the constitution.*' [Emphasis in original.] 374 S.W.2d 262.

"Certainly," the court continued, "... a property holder has the right to say to the court that he is protected by the constitution from the imposition of tax by persons to whom the constitution, in effect, denies such power." We do not argue with such

9. Tex.Rev.Civ.Stat.Ann. art. 7057g provides in pertinent part:

Validation of unenforceable tax levies and junior college district boundary changes
Unenforceable tax levies and boundary changes
Section 1. (a) All tax levies and junior college district boundary changes heretofore made by and for any tax unit, which levies or boundary changes are unenforceable because not made in strict compliance with the form and manner required by statute or because of any

other defect which may be cured by the legislature, are hereby validated and declared enforceable the same as though they had been regularly made in proper form and manner.

 \* \* \* \* \* \*

*Tax unit defined*
Section 3. A tax unit or unit as used in this Act is any governmental agency or subdivision of the state which levies a property tax (ad valorem or otherwise).

 \* \* \* \* \* \*

logic since it was reiterated by the Supreme Court in the *Crabb* case *supra.*

Nor do we agree with the appellees that the requirement to hold a tax election was vitiated by the fact that a petition was signed by the majority of qualified voters in the land within the extension of the boundaries. While *Kuhn v. City of Yoakum,* 6 S.W.2d 91 (Tex.Comm.App.1928, opinion adopted), contains language seemingly contrary to our holding, the case is distinguishable on its facts.

█ In the *Kuhn* case the court held that a petition for extension of boundaries was sufficient to burden the residents of the added territory with the district's pre-existing debts even in the absence of an election for that purpose. *See Kuhn v. City of Yoakum,* 257 S.W. 337, 339 (Tex.Civ.App. —Galveston 1923, no writ). However, in *Kuhn* an article VII, § 3 election was held in the district as extended prior to the levy of taxes. *Kuhn v. City of Yoakum,* 279 S.W. 872 (Tex.Civ.App.—Galveston 1925), aff'd, 6 S.W.2d 91. Unlike Freer Independent School District, the City of Yoakum Independent School District had the power to tax within the district as extended by virtue of an election held for that purpose. In the case before us, the district had no power to tax anyone until it complied with the requirements of Article VII, § 3 of the constitution. And as stated in the *Crabb* case by the Supreme Court, a petition is not an election called for by our constitution.

We sustain appellants' challenge to the validity of the Freer Independent School District's authority to levy, assess or collect *ad valorem* taxes in the absence of an election held for that purpose. The taxes adjudged against appellants and in favor of appellee Freer Independent School District are without constitutional authority and are declared void as is the lien ordering foreclosure on such taxes.

*The Award of Attorneys Fees*

The next three points of error attack the amount, the evidence supporting, and the nature of the attorneys' fees awarded by the trial court. We shall deal first with the amount of attorney fees awarded by the court.

The judgment reflects the Freer Independent School District and Benavides School Districts were awarded attorney fees amounting to 15% of the taxes on which foreclosure was granted. The intervening governmental units were awarded attorney fees in the amount of 10% of the taxes owed to them. Appellants contend that the governing statutes dictate that all appellees are limited to 10% of the amount of taxes on which foreclosure was granted. Both sides agree that the starting point in the determination of the amount of attorney fees is article 7343, Tex.Rev.Civ.Stat.Ann. (Vernon 1960) as it existed at the time of trial.[10]

We consider first the granting of attorney fees to the school districts. The pertinent part of article 7343, the statute allowing cities and school districts to collect their taxes, provided, " . . . The county attorney, or other attorney, filing tax suits for independent school districts, shall be entitled to the same fees provided by law in suits for State and county taxes." The parties, however, disagree as to the amount allowed to the State and county by law.

Appellants point to article 7332, Tex.Rev. Civ.Stat.Ann. (Vernon 1960), as amended in 1965,[11] which provided that when the district or county attorney files suit to foreclose on delinquent taxes " . . . the compensation of said attorney shall be such reasonable attorney fees as may be incurred not exceeding 10% of the amount sued for." It is undisputed, however, that the county or district attorney did not proceed in this case, and the appellees retained private attorneys as authorized by article 7343, *supra.*

█ Article 7335, Tex.Rev.Civ.Stat.Ann.

**10.** Repealed by Acts 1979, 66th Leg., p. 2329, ch. 841, § 6(a)(1), eff. Jan. 1, 1982. *See generally* Tex.Rev.Tax Code Ann. §§ 6.30 and 33.48.

**11.** Repealed by Acts 1979, 66th Leg., p. 2329, ch. 841, § 6(a)(1), eff. Jan. 1, 1982. *See now* Tex.Rev.Tax Code Ann. § 6.30(a).

(Vernon 1960)[12] permitted the commissioners court to contract with private attorneys for the collection of delinquent taxes. By this statute, in conjunction with article 7335a, Tex.Rev.Civ.Stat.Ann. (Vernon 1960)[13] the amount of such contracts is limited to 15% of the taxes collected. The trial court assessed that amount.

The question therefore reduces itself to whether the contractual 15% authorized by article 7335 is an amount "provided by law" under article 7343.

In *Bell v. Mansfield Independent School District,* 133 Tex. 403, 129 S.W.2d 629 (Tex. Comm.App.1939, opinion adopted), Bell, a tax collection attorney, sued the school district to recover 15% of the amount of taxes he collected. Noting that other fees are allowed to independent school districts than those awarded to district and county attorneys in article 7332, the court stated:

> It is thus seen that when the contract in suit was executed a contract for the payment of fifteen percent of the amount collected for the services of an attorney

in collecting state and county taxes was authorized. The authority to make it was conferred by statute. The fees were, therefore, 'provided by law'.

129 S.W.2d at 631.

The trial court did not err in assessing attorney fees in the amount of 15%.

■ Benavides Independent School District, being a plaintiff is entitled to 15% of the amount it collected from the Ranch Company correctly computed in the judgment as $3,223.50. Freer Independent School District, which cannot legally collect any taxes for the years in question, is entitled to no attorney fees. The 10% award to the intervenors as attorney fees is expressly provided by article 7345b § 6 Tex.Rev.Civ. Stat.Ann. (Vernon 1960), upon a showing of reasonableness, and were correctly awarded.[14]

If we construe appellants' next argument correctly, they contend that not only did the court err in awarding attorney fees in an amount exceeding 10%, but that when a

**12.** Tex.Rev.Civ.Stat.Ann. art. 7335 (Vernon 1960) provided:

> Whenever the commissioners court of any county after thirty days written notice to the county attorney or district attorney to file delinquent tax suits and his failure to do so, shall deem it necessary or expedient, said court may contract with any competent attorney to enforce or assist in the enforcement of the collection of any delinquent State and county taxes for a per cent on the taxes, penalty and interest actually collected, and said court is further authorized to pay for an abstract of property assessed or unknown and unrendered from the taxes, interest and penalty to be collected on such lands, but all such payment and expenses shall be contingent upon the collection of such taxes, penalty and interest. It shall be the duty of the county attorney, or of the district attorney, where there is no county attorney, to actively assist any person with whom such contract is made, by filing and pushing to a speedy conclusion all suits for collection of delinquent taxes, under any contract made as herein above specified; provided that where any district or county attorney shall fail or refuse to file and prosecute such suits in good faith, he shall not be entitled to any fees therefrom, but such fees shall nevertheless be collected as a part of the costs of suit and applied on the payment of the compensation allowed the attorney prosecuting the suit, and the attorney with whom such

contract has been made is hereby fully empowered and authorized to proceed in such suits without the joinder and assistance of said county or district attorneys. Acts 2nd C.S. 1923, p. 37; Acts 3rd C.S.1923, p. 182. Repealed by Acts 1979, 66th Leg., p. 2329, ch. 841, § 6(a)(1), eff. Jan. 1, 1982. *See now* Tex. Rev.Tax Code Ann. § 6.30(c).

**13.** Tex.Rev.Civ.Stat.Ann. art. 7335a (Vernon 1960) in pertinent part provided:

> Section 1. No contract shall be made or entered into by the commissioner's court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen percent of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. * * * Acts 1930, 41st Leg., 4th C.S., p. 9, ch. 8; Repealed by Acts 1979, 66th Leg., p. 2329, ch. 841, § 6(a)(1), eff. Jan. 1, 1982. *See now* Tex.Rev.Tax Code Ann. § 6.30(c) to (e).

**14.** Neither appellants nor appellees suggest that the State of Texas or the County of Duval could have been awarded attorney's fees not to exceed fifteen percent of amount collected under articles 7335 and 7335a, *supra.* In view of the repeal of both statutes any comment on our part as to whether either entity could have been awarded in excess of ten percent would have historical interest only.

private lawyer is retained by a taxing entity, attorney fees cannot be assessed as costs. A reading of the judgment, however, shows that none of the attorney fees were assessed as costs in this case.

The judgment, in this regard, reads;

In addition to the above adjudged recoveries against the defendants, it is further ORDERED, ADJUDGED, and DECREED, that plaintiffs and plaintiff-intervenors recover all costs of Court incurred herein, *in addition to attorneys' fees* which are hereby approved and awarded ... [Emphasis added.]

If court costs are awarded "in addition to attorneys' fees" we can see no support for the appellants' contention that such fees were awarded *as costs.* Appellants' point of error so contending is overruled.

Appellants next advance the proposition that all the statutes allowing the taxing units to recover attorney fees require proof of reasonableness, and there is none in the record. We overrule this contention. The record shows no objection to attorney fees. While formal exceptions are not required, Rule 373, Tex.R.Civ.P. requires the complaining party to make known to the court the objections and grounds therefore. As was said in *Holland v. Fidelity & Deposit Co. of Maryland,* 623 S.W.2d 469 (Tex.App. —Corpus Christi 1980, no writ),

We find no evidence by appellants to rebut the reasonableness of the fees. Therefore appellants cannot be heard to complain of reasonableness of fees for the first time on appeal. *Lewis v. Texas Employers Insurance Association,* 151 Tex. 95, 246 S.W.2d 599 (Tex.1952); *Whatley v. Whatley,* 493 S.W.2d 299 (Tex. Civ.App.—Dallas 1973, no writ); *Cobb v. Texas Distributors, Inc.,* 524 S.W.2d 342 (Tex.Civ.App.—Dallas 1975, no writ).

623 S.W.2d at 471.

### The Bulk Lien In Solido

By their last group of points of error, appellants argue "that portion of the judgment which decrees a 'bulk lien in solido' flaunts the most rudimentary concept of Texas tax practice and is palpably erroneous."

The pertinent portion of the judgment provides:

It is therefore ordered, adjudged, and decreed that a bulk lien in solido exists against each and all of the above described parcels of property in solido and also in solido on the oil, gas, and mineral royalty interests (RI), leasehold working interests (WI), overriding royalty interests (OR), and other mineral lease interests in the grand total aggregate amount of $557,069.92 superior to all other liens, charges, or encumbrances of any character for the respective amount of ad valorem taxes, penalties, interest and costs herein charged to be due on said parcels of property and oil, gas and mineral royalty interests (RI), leasehold working interests (WI), overriding royalty interests (OR), ... which lien in the grand total aggregate amount of $557,069.92 is hereby foreclosed in bulk and in solido on each of said above described parcels of property and each oil, gas, and mineral royalty interests (RI), leasehold working interests (WI), overriding royalty interests (OR), and other mineral lease interests ...

We note that the grand total aggregate amount of $557,069.92 constituting the basis for the bulk lien in solido ordered foreclosed derives from an arithmetical summation of delinquent taxes, penalties, interests, costs and attorneys fees adjudged against both appellants.

Appellees' petitions and the tax rolls admitted in evidence in support of appellees' suit for delinquent taxes disclose that the properties of both appellants were assessed separately. In fact the record, with some exceptions created by illegibility in some instruments, clearly discloses the amount of delinquent taxes due upon each of some 305 parcels owned by both appellants. The judgment also recognizes the individual ownership interests of each appellant in the various parcels but does not adjudge the individual liability of each parcel due to delinquency.

Article VIII, § 15, Tex. Const., 1876 provides:

The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent tax payer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide.

Our Supreme Court, at least as early as 1923, in *Richey v. Moor,* 112 Tex. 493, 249 S.W. 172 (1923) declared that "The lien provided by section 15 of article 8 of the Constitution attaches only to each separate tract of parcel of land for the taxes assessed against it."

Speaking further regarding the same subject it stated:

* * * Our entire scheme of taxation, from the initial proceeding of rendition to that of final payment, or of sale under seizure or by court process, provides for keeping separate the description of each tract of land, with the amount of taxes assessed against the taxpayer, or taxes levied against other tracts of land. * * *

* * * The right to discharge the lien on any particular tract of land arises as a necessary corollary from the constitutional provision which limits the lien on any tract to the amount assessed against it. * * *

* * * The citizen always has the right to pay the amount of any one tax listed against him, or as held in some jurisdictions, to pay the tax on any one item or piece of property which has been separately assessed, without offering to pay the taxes on other parts.

249 S.W. at 174, 175.

Much the same was held in *Electra Independent School District v. W.T. Waggoner Estate,* 140 Tex. 483, 168 S.W.2d 645 (Tex. Comm.App.1943, opinion adopted); *State Mortgage Corporation v. Ludwig,* 35 S.W.2d 267 (Tex.Civ.App.—San Antonio 1931), *rev'd and rendered,* 121 Tex. 268, 48 S.W.2d 950 (Tex.1932); *Seber v. Mills,* 18 S.W.2d 207 (Tex.Civ.App.—Galveston 1928, writ ref'd); *Davis v. West,* 5 S.W.2d 870 (Tex. Civ.App.—Galveston 1928, writ ref'd).

If, however, the owner uses several tracts of land together or if he renders several tracts of land together, an *in solido* (or bulk) assessment is valid and the lien securing the tax extends over the entire parcel. *Duval County Ranch Co. v. State,* 587 S.W.2d 436 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *Victory v. State,* 138 Tex. 285, 158 S.W.2d 760 (1942); 21 J. Howell, Property Taxes § 381 (Texas Practice 1975).

There is no evidence in the record as to the manner of use of the realty by the appellants or the manner of rendition used by them. The record does reflect that the properties were rendered by both appellants and that the rendition statements were to be, with leave of court, included by appellees as one of their exhibits. They were not provided and do not, therefore, appear in the record. All evidence, however, points to a rendition by appellants in the manner assessed by the various taxing entities, individually and separate.

The petition of each appellee, in fact, prayed for foreclosure of tax liens upon each separate parcel in accordance with the amount representing delinquent taxes, penalties, etc. Exhibits attached to the various petitions disclose assessment by separate parcel. Delinquency statements mailed to each appellant also disclose that separate statements were provided by the taxing authorities for each parcel.

We believe the concerns expressed by our Supreme Court in *Richey v. Moor, supra,* find application in the instant case. We are further troubled by another provision in the foreclosure judgment that makes the individual properties of one appellant subject to the lien upon the separately owned property of the other appellant. We believe that a bulk lien upon multiple properties of multiple defendants is in violation of Article 8, section 15, Constitution of Texas and Arti-

cle 7172, Tex.Rev.Civ.Stat., *see also Richey v. Moor, supra; Seber v. Mills, supra.*

Were we to approve the foreclosure judgment, we would be upholding an attempt by the various taxing authorities to make one taxpayer pay taxes on property owned by another taxpayer. To do so would undermine the inviolable principle that every citizen has a duty to pay lawful taxes legally assessed against property he owns in order to help maintain the lawful governmental institutions of our country. *See Bashara v. Saratoga Independent School District,* 139 Tex. 532, 163 S.W.2d 631 (Tex.Comm.App. 1942, opinion adopted).

The instant foreclosure judgment does not even measure up to the judgment declared void in *Seber v. Mills, supra,* where minimally the separate lots were listed together with the amount of taxes delinquently due upon each of them.

Accordingly, that portion of the judgment declaring a bulk lien in solido and ordering foreclosure in like manner is void and of no effect.

The portion of the judgment in favor of Freer Independent School District for delinquent taxes, penalties, interest, costs and attorneys' fees against both appellants is likewise void and unenforceable, as is the tax lien representing the aggregate amount of those items.

In all other respects the judgment of the trial court is affirmed.

Inasmuch as the judgment does not contain an itemization of delinquent taxes due upon each parcel of property for which the judgment has been affirmed, and because a large number of exhibits offered in support of delinquency are illegible as to description, we are not in a position to reform the judgment and enter the judgment the trial court should have entered. Accordingly, we reverse the judgment of the trial court in part, affirm in part and remand the cause to the trial court for entry of a judgment consistent with this opinion.