

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 12, 2008

Ms. Peggy D. Rudd
Director and Librarian
Texas State Library and Archives Commission
Post Office Box 12927
Austin, Texas 78711-2927

Opinion No. GA-0626

Re: Authority of a multi-jurisdictional library district to assess and collect ad valorem taxes (RQ-0648-GA)

Dear Ms. Rudd:

You inquire about the taxing authority of multi-jurisdictional library districts ("library districts") created under Local Government Code chapter 336.[1] *See* TEX. LOC. GOV'T CODE ANN. ch. 336 (Vernon 2005 & Supp. 2007). You state that no library districts have been established under this statute yet, but several jurisdictions wish to consider this option. *See* Request Letter, *supra* note 1, at 2. However, they hesitate to do so without legal guidance as to their taxing authority. *See id.*

You first ask whether Local Government Code chapter 336 provides sufficient authority to enable library districts to assess and collect ad valorem taxes on property within district boundaries or whether a constitutional amendment is necessary to grant this authority. *See id.* at 1. Section 336.021 provides that a multi-jurisdictional library district may be created by a "lead governmental entity," defined as the county or municipality that proposes to create the district. *See* TEX. LOC. GOV'T CODE ANN. § 336.021(a) (Vernon Supp. 2007); *see also id.* § 336.001(4) (Vernon 2005) (defining "[l]ead governmental entity"). The lead governmental entity adopts a resolution proposing "the creation of a district for specific counties and municipalities that by resolution agree to have their territory in the district." *Id.* § 336.021(a); *see id.* § 336.022 (Vernon Supp. 2007) (territory included in district). A district created under chapter 336 "is a special district and a political subdivision of this state." *Id.* § 336.002 (Vernon 2005).

A district has statutory authority to call an election to approve a sales tax or an ad valorem tax on property in the district, or both. *See id.* § 336.023(a)–(b) (Vernon Supp. 2007); *see also id.* § 336.023(c) (the lead governmental entity must set by resolution the date of the election and the type and rate of each tax that will appear on the ballot proposition). However, no provision of the Texas Constitution expressly authorizes a library district to impose an ad valorem tax. Thus, your question

---

[1]Letter from Ms. Peggy D. Rudd, Director and Librarian, Texas State Library and Archives Commission, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Nov. 14, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

raises the following issue: Whether the Legislature may authorize a political subdivision to impose an ad valorem[2] tax absent express constitutional authority.

We begin with the well-established rule that the Legislature may adopt any law "not forbidden expressly or by implication" by the Texas Constitution. *Brown v. City of Galveston*, 75 S.W. 488, 492 (Tex. 1903); *see Gov't Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 563 (Tex. 1963) (Legislature's authority is limited only by the express or implied restrictions arising from the constitution). Moreover, "[t]he power to prescribe taxes and penalties rests with the Legislature, and [the Supreme] Court will not interfere with that authority and declare a law invalid unless the law clearly appears to violate the Constitution of the State." *Isbell v. Gulf Union Oil Co.*, 209 S.W.2d 762, 765 (Tex. 1948). *See also Stratton v. Comm'rs Court of Kinney County*, 137 S.W. 1170, 1177 (Tex. Civ. App.—San Antonio 1911, writ ref'd) (the power to tax for governmental purposes is inherent in the state's sovereignty and is limited only by the constitution).

The constitutional question before us was raised by the parties in *Shepherd v. San Jacinto Junior College District*, which involved a challenge to the constitutionality of legislation authorizing a junior college district to levy and collect an ad valorem tax for the support and maintenance of the junior college. *See Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962). The junior college district argued that the Legislature may create a political subdivision and authorize it to levy, assess, and collect an ad valorem tax, without constitutional authorization. *See id.* The majority opinion of the Texas Supreme Court declined to address this question, finding instead that constitutional authority existed in Texas Constitution article VII, section 3.[3] *See id.* at 743, 747.

The concurring and dissenting opinions considered whether the Legislature may delegate ad valorem taxing power to a political subdivision absent express constitutional authority. *See id.* at 757–58. Justice Griffin, concurring, found no constitutional prohibition against legislation authorizing a junior college district to levy an ad valorem tax, and also found the legislation to be impliedly authorized by Texas Constitution article VII, section 1 and former article III, section 48. *See id.* at 757.

Chief Justice Calvert's dissent reviewed relevant constitutional provisions and constitutional history.[4] The Chief Justice noted that constitutions prior to the constitution of 1876 had not placed any limitation on the legislative power to levy ad valorem taxes, but the 1876 constitution expressly limited the Legislature's power to levy such taxes as well as "the power of every political

---

[2] "An ad valorem tax is levied against property on its value." *State v. Wynne*, 133 S.W.2d 951, 957 (Tex. 1939), *cert. denied*, 310 U.S. 659 (1940). In this opinion, we will use the terms "ad valorem tax" and "property tax" interchangeably.

[3] Article VII, section 3 authorizes the Legislature to provide for the formation of school districts with authority to levy and collect an ad valorem tax.

[4] Judge Walker joined in the dissent. *See Shepherd*, 363 S.W.2d at 781.

subdivision or municipal corporation then known to delegates of the Convention and to the people." *Id.* at 770. The constitutional provisions that expressly authorized specific entities to levy ad valorem taxes also expressly limited the taxing power. *See id.*[5] Moreover, the delegates to the 1875 constitutional convention defeated several proposed amendments that would have authorized the state, school districts, or cities and counties to levy ad valorem taxes to support schools. *See id.* Chief Justice Calvert thus concluded that the intent of the people who adopted the constitution was to deny the state and its political subdivisions the power to levy and collect ad valorem taxes except as expressly provided in the constitution.[6] *Id.* at 770–71.

Intermediate appellate court opinions subsequent to *Shepherd* have stated in dicta that the Legislature may permit a political subdivision to levy an ad valorem tax only pursuant to express constitutional authority, thus echoing the *Shepherd* dissent without citing it. The court in *Texas Municipal Power Agency*, discussing the Legislature's creation of a political subdivision without ad valorem taxing power, stated that "[t]he restrictions on the power to levy ad valorem taxes found in the Constitution necessarily limit the power of the legislature to create municipal corporations or political subdivisions to be supported by ad valorem taxation." *State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 271 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd); *see also Manges v. Freer Indep. Sch. Dist.*, 653 S.W.2d 553, 558 (Tex. App.—San Antonio 1983), *rev'd on other grounds*, 677 S.W.2d 488 (Tex. 1984) (school district has no inherent authority to levy ad valorem taxes; the authority must arise from a grant of power found in the constitution).

Prior opinions of this office have recognized implied constitutional limitations on the Legislature's authority to create a new political subdivision with authority to impose an ad valorem tax. In 1944, the State Librarian requested an opinion on a question similar to your question. She inquired as follows:

> Would it take a constitutional amendment to allow a special
> tax to be voted for county library support or additional county library
> support?

Tex. Att'y Gen. Op. No. O-5842 (1944) at 1. The opinion cited the limits on property tax found in Texas Constitution article VIII, section 9, which at that time provided that "no county, city or town shall levy more than twenty-five cents for city or county purposes [and other limits for roads and bridges, jury fees, and other permanent improvements] on the one hundred dollars valuation." TEX. CONST. art. VIII, § 9 historical note (Vernon 2007) [Act approved Apr. 7, 1883, 18th Leg., R.S., Tex. J. Res. 4, § 1, 1883 Tex. Gen. Laws 133, 133, *reprinted in* 9 *H.P.N. Gammel, The Laws of Texas 1822–1897*, at 439 (Austin, Gammel Book Co. 1898)]. This office concluded that the county could

---

[5]*See* TEX. CONST. art. VIII, §§ 1-a, 9.

[6]*See* 2 GEORGE D. BRADEN et al., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 519–21 (1977) (Author's Comment on Texas Constitution, article VII, § 3, praising *Shepherd* dissent).

allocate to library purposes part of the twenty-five cents on the one hundred dollars valuation allowed for county purposes, but a constitutional amendment would be required to authorize a library purpose tax that would be in addition to the constitutionally-limited twenty–five cents per hundred dollars valuation. *See* Tex. Att'y Gen. Op. No. O-5842 (1944) at 3.

Attorney General Opinion V-1116 addressed a 1949 enactment authorizing a commissioners court to establish a mosquito control district with ad valorem taxing power in the county.[7] *See* Tex. Att'y Gen. Op. No. V-1116 (1950). No constitutional provision expressly permitted a mosquito control district to impose an ad valorem tax. The opinion determined that the tax levy authorized for mosquito control districts was part of the county ad valorem tax established and limited by article VIII, section 9 of the constitution, citing the following statement from *Anderson v. Parsley*:

> The power of the county commissioners under the Constitution, art. 8, § 9, as amended December 19, 1890, to levy a tax of 25 cents on $100 valuation to construct buildings, sewers, and other permanent buildings, being limited to that levy for all such purposes, a levy can be made for a courthouse and jail only so far as the limit has not already been reached for the other purposes.

*Anderson v. Parsley*, 37 S.W.2d 358, 363 (Tex. Civ. App.—Fort Worth 1931, writ ref'd). Thus, the 1949 statute did not add to the county taxation power authorized by Texas Constitution article VIII, section 9.

We also note the Legislature's consistent practice of proposing amendments to the constitution to authorize new ad valorem taxes. As initially adopted in 1876, the constitution limited the authority of counties, cities, and towns to assess and collect ad valorem taxes. *See Shepherd*, 363 S.W.2d at 770 (Calvert, C.J., dissenting). It has been amended numerous times to expressly grant additional taxing authority to cities or counties or to authorize the Legislature to create new kinds of political subdivisions with ad valorem taxing authority. *See, e.g.*, TEX. CONST. art. III, §§ 48-e (special districts for emergency services, adopted 1987), 52(b) (ad valorem tax for road and flood purposes, adopted 1904), *see* interp. commentary (Vernon 2007) (amendment adopted because constitutional limits on state, city, and county taxing power made large scale water conservation projects or road construction programs impossible to finance); TEX. CONST. arts. III, § 52d (tax for road purposes in Harris County, adopted in 1937); VII, § 3 (authorizing state ad valorem tax for school districts and authorizing Legislature to provide for additional ad valorem tax in school districts, adopted 1883); IX, §§ 9 (hospital districts with ad valorem taxing power, adopted 1962), 9B (hospital districts with ad valorem taxing power in counties of 75,000 or less, adopted 1989), 12 (airport authorities with ad valorem taxing power, adopted 1966); XI, §§ 4 (limits on property tax authority of general law cities, adopted 1876 and amended to increase limits in 1920), 5 (limit on property tax authority of home rule cities, adopted 1876), 7 (authorizing property tax in certain

---

[7]*See* Act of Mar. 10, 1949, 51st Leg., R.S., ch. 46, 1949 Tex. Gen. Laws 80, 80–81 (now codified at Health and Safety Code chapter 344).

counties for seawalls; tax adopted in 1932); XVI, § 59 (authorizing Legislature to create conservation and reclamation districts with authority to levy and collect taxes, adopted 1917). For more than a century, the Legislature has proposed and the voters have adopted constitutional amendments to authorize new ad valorem taxes or increase the amount that could be levied and collected under an existing tax.

Texas Constitution article VIII, section 17 is also relevant to our discussion of your question. In contrast to the limits on ad valorem taxing power that permeate the Texas Constitution, article VIII, section 17 provides broad authority for the Legislature to authorize the taxation of subjects and objects in addition to those expressly named in the constitution:

> The specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require *other subjects or objects* to be taxed in such manner as may be consistent with the principles of taxation fixed in this Constitution.

TEX. CONST. art. VIII, § 17 (emphasis added). Article VIII, section 17 must be read together with the constitutional provisions expressly authorizing property taxes and other specific kinds of tax. *See Guinn v. State*, 551 S.W.2d 783, 788 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.). As adopted in 1876, article VIII, section 1 authorized only a property tax, poll tax, income tax, and occupation tax.[8] However, other *kinds* of taxes, such as those imposed by the Limited Sales, Excise and Use Tax Act, were not "by reason of such omission [from article VIII, section 1] invalid and in violation of the Constitution." *Am. Transfer & Storage Co. v. Bullock*, 525 S.W.2d 918, 923 (Tex. Civ. App.—Austin 1975, writ ref'd). The Legislature has plenary power under article VIII, section 17 to require the taxation of subjects and objects not expressly named in the constitution. *See id.* The legislative power to tax must be exercised in a manner consistent with the principles of taxation fixed in the constitution, such as the requirement that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a); *see Am. Transfer & Storage Co.*, 525 S.W.2d at 920.

In *State v. Wynne,* the Texas Supreme Court determined that a tax on the distribution of motor fuel was an excise tax and not a property tax, and for that reason the tax was valid under article VIII, section 17 and did not violate the limits on property tax imposed by article VIII, section 9. *See State v. Wynne*, 133 S.W.2d 951, 957–58 (Tex. 1939), *cert. denied*, 310 U.S. 659 (1940). And, article VIII, section 17 authorized the Legislature to adopt the statutes providing for the unemployment tax. *See Guinn*, 551 S.W.2d at 788; *see also Friedman v. Am. Surety Co.*, 151 S.W.2d 570, 580 (Tex. 1941) (characterizing unemployment compensation tax on employers as an "excise tax," and finding that it did not violate various constitutional provisions). Article VIII, section 17 authorizes the Legislature to impose taxes on "subjects or objects" other than those expressly authorized by the constitution, but it does not authorize the Legislature to remove limits

---

[8]*See* TEX. CONST. art. VIII, § 1, 8 *H.P.N. Gammel, The Laws of Texas 1822-1897*, at 813 (Austin, Gammel Book Co. 1898), *available at* http://texashistory.unt.edu/permalink/meta-pth-6731:781 (last visited Apr. 29, 2008). Article VIII, section 1 of the Texas Constitution was amended in 1978 to delete the poll tax and substitute taxation of intangible property. *See* TEX. H.R.J. RES. 1, 65th Leg., 2d C.S., 1978 Tex. Gen. Laws 54 (adopted 1978).

on taxation imposed by the constitution. *See, e.g.,* TEX. CONST. art. VIII, §§ 9 (limits on property tax assessed by counties, cities, towns), 24(a) (law imposing personal income tax may not take effect until approved by majority of voters at a statewide referendum).

In construing constitutional provisions, we try to give them the effect their makers and adopters intended. *See Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353, 355 (Tex. 2000); *City of El Paso v. El Paso Cmty. Coll. Dist.,* 729 S.W.2d 296, 298 (Tex. 1986). And we strive to avoid a construction that renders any provision meaningless or inoperative. *See Stringer,* 23 S.W.3d at 355; *Hanson v. Jordan,* 198 S.W.2d 262, 263 (Tex. 1946). The Supreme Court of Texas has not definitively settled whether the Texas Constitution impliedly prohibits the Legislature from allowing a political subdivision to impose ad valorem taxes absent express constitutional authorization. However, the Legislature has shown a long-standing pattern of amending the constitution to authorize new kinds of political subdivisions to impose ad valorem taxes, while certain intermediate appellate courts have assumed that ad valorem taxes must be constitutionally authorized. This office has also stated that the Legislature may not increase a county's ad valorem taxing power absent a constitutional amendment. *See* Tex. Att'y Gen. Op. No. O-5842 (1944) at 3. The authority on this question tends to indicate that the Legislature may not impose an ad valorem tax absent express constitutional authority. In our opinion, it is more likely than not that a court would find that a multi-jurisdictional library district established under Government Code chapter 336 lacks authority to assess and collect ad valorem taxes on property within the district, absent express constitutional authorization.[9]

You also ask whether the lead governmental entity, "the county or municipality that by resolution creates a Library District, [may] collect ad valorem taxes on behalf of the Library District and disburse those taxes to the Library District under existing authority or is a constitutional amendment required to grant this specific authority." *See* Request Letter, *supra* note 1, at 1. That is, if a duly constituted library district wishes to contract with the lead governmental entity to collect its taxes, may it do so?[10] In answering this question, we reiterate our opinion that a court would probably hold this ad valorem tax unconstitutional.

Local Government Code section 336.251 provides for collection of library district taxes:

> (b)  If the district imposes an ad valorem tax, the board shall have the taxable property in its district assessed for ad valorem taxation and the ad valorem taxes in the district collected, in accordance with any one of the methods set forth in this section, and any method adopted remains in effect until changed by the board.

---

[9]The Legislature has authorized the creation of a multi-jurisdictional library district supported by a sales tax. *See* TEX. LOC. GOV'T CODE ANN. § 336.027(a) (Vernon Supp. 2007).

[10]Telephone Interview with Peggy Rudd, Director and Librarian, Texas State Library and Archives Commission (Mar. 13, 2008) (clarifying question 2).

> (c) The board may have the taxable property in its district assessed or its taxes collected, wholly or partly, by the tax assessors or tax collectors of any county, municipality, taxing district, or other governmental entity in which all or any part of the district is located. The tax assessors or tax collectors of a governmental entity, on the request of the board, shall assess and collect the taxes of the district in the manner prescribed in the Property Tax Code. Tax assessors and tax collectors shall receive compensation in an amount agreed on between the appropriate parties, but not to exceed two percent of the ad valorem taxes assessed.

TEX. LOC. GOV'T CODE ANN. § 336.251(b)–(c) (Vernon 2005).

Pursuant to subsection 336.251(c), the district board may have the district's taxes collected by the tax collector of any county or municipality in which all or any part of the district is located. *See id.* § 336.251(c). The lead governmental entity is a county or municipality in which at least part of the district is located. *See id.* § 336.021 (creation of district by county or municipality that by resolution assumes the role of lead governmental entity). Section 336.251(c) authorizes the library district board to have the tax collector of the lead governmental entity collect its taxes in the manner prescribed in the Property Tax Code. *See id.* § 336.251(c); *see also* TEX. TAX CODE ANN. § 1.01 (Vernon 2008) (title 1 of the Tax Code may be cited as the Property Tax Code). The provisions governing property tax collection are found in Tax Code chapter 31. *See id.* ch. 31. Subsection 336.251(c) of the Local Government Code establishes a limit on the compensation that a tax collector may receive from the district board. Thus, a library district board may have its taxes collected by the tax collector of the lead governmental entity and remitted to it pursuant to Local Government Code section 336.251. *See* TEX. LOC. GOV'T CODE ANN. § 336.251 (Vernon 2005). While the board's power to negotiate the collector's compensation is limited by section 336.251, it appears that the Legislature may amend this provision without also amending the constitution. *See* TEX. TAX CODE ANN. § 6.24 (Vernon 2008) (authority of taxing unit to contract with other taxing units for the assessment and collection of taxes).

## S U M M A R Y

The Texas Supreme Court has not determined whether the Texas Constitution impliedly prohibits the Legislature from allowing a political subdivision to impose ad valorem taxes absent express constitutional authorization. However, the authority that exists indicates that a court would more likely than not find that express constitutional authority is necessary for legislation permitting a multi-jurisdictional library district established under Government Code chapter 336 to impose an ad valorem tax.

If the ad valorem tax authorized by Local Government Code chapter 336 were constitutional, the library district board could have the tax collector of the lead governmental entity collect and remit taxes to the district. Although section 336.251 limits the board's authority to negotiate the tax collector's compensation, it appears that the Legislature may amend this provision without also amending the constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee