MILAM COUNTY v. J. M. BATEMAN ET AL.

• (Case No. 853.)

54  153
77   30
77  417
54  153
86   41

1. VESTED RIGHT — LOCATION AND SURVEY.— A valid location on vacant land, and a survey thereunder, constitutes a vested right, and the legislature does not retain the absolute disposition of the land until the patent issues.

2. COUNTIES.— Counties are bodies corporate and politic, and have capacity to take and hold title in fee to real and personal property; as such they could acquire title to their school lands donated by the state.

3. CONSTITUTIONAL LAW — COUNTY SCHOOL LANDS.— The grants, first of three leagues, and afterwards of four leagues of land to each county for school purposes, made by the act of January 26, 1839, and the act of January 16, 1850, were recognized and confirmed by sec. 4, art. X of the constitution of 1845.

4. CONSTITUTIONAL LAW — SCHOOL LANDS.— Though, under the consti-
tution of 1869, the legislature had the right to control county school
lands and to provide for their sale, the proceeds to be added to the
public school fund of the state, without any reservation such as
was contained in the constitution of 1866, that each county should
receive the full benefit of the interest arising from the proceeds of
sales of its lands, yet the constitution of 1869 did not divest the
title of the counties to their school lands.

5. SAME.— Construing section 6, art. VII of the constitution of 1876,
in connection with the constitutions which preceded it, it is clear
that it has always been the intention of the state to vest the right of
property in the county school lands in the several counties respect-
ively.

6. CONSTITUTIONAL LAW.— The legislature, as the representative of the
state sovereignty, can exercise absolute power, when not restrained
by constitutional prohibition, over the political rights of counties;
and those rights are not within the constitutional prohibition
against retroactive laws, and those which impair vested rights.
The property rights of a county, however, are protected by the
same constitutional guarantees which protect the property of the
citizen.

7. VESTED RIGHT.— The fact that a county obtains property by dona-
tion from the state does not impair its right to have it protected as
a vested right.

8. SAME.— If the property was donated by the state for a specified
object, the state may exercise such supervisory control as may
be necessary to enforce a performance of the trust, but it cannot
by legislation divert its use to other and different parties and pur-
poses than those contemplated when it was originally granted.

9. CONSTITUTIONAL LAW — COUNTY SCHOOL LAND.— The state has no
power to take from a county, school land which it had acquired
legally, and arbitrarily give it, as was attempted by the act of July
21, 1870, to private parties.

10. CONSTITUTIONAL LAW.— The act of July 21, 1870, under which the
legislature attempted, for the relief of settlers on Milam county
school lands, to authorize the issuance of patents in violation of
the law, as already decided by the supreme court, was judicial and
not legislative, and was unconstitutional.

11. CONSTITUTIONAL LAW — LEGISLATIVE POWER.— The legislative action
cannot be made to retroact upon past controversies, and to reverse
decisions which the courts in the exercise of their jurisdiction
have made; this would not only be the exercise of judicial power,
but would be its exercise in its most objectionable form. Such a
doctrine would make the legislature a court of review, to which
parties might appeal when dissatisfied with the rulings of a court.

12. FORFEITURE — RETURN OF FIELD NOTES.— The failure of Milam
county to have the field notes of the surveys of its school lands re-
corded in the office of the county clerk, and returned to the general
land office by the 31st day of August, 1853, did not defeat its title
to the county school lands.

13. CASES APPROVED.— Fannin County v. Riddle, 51 Tex., 360, and Hen-
derson v. Shook, 51 Tex., 370, approved.

14. QUIT-CLAIM DEED.— A party claiming land under a quit-claim deed
cannot defend as a *bona fide* purchaser.

APPEAL from Hood. Tried below before the Hon. T.
L. Nugent.

Suit by Milam county, in trespass to try title, against
J. M. Bateman and twenty-five others, for rents and
profits for one league of land situated in Hood county
Texas, claiming the same as a part of the land granted
to her for school purposes, under two acts of the
congress of the republic of Texas, the first approved
January 26, A. D. 1839, the second approved February 5,
A. D. 1840; located and surveyed on the 23d day of De-
cember, A. D. 1849, and the field notes recorded in Milam
county June 9, A. D. 1858, duly certified by the clerk
of the county court of Milam county, Texas, and filed in
the general land office June 16, A. D. 1858, and patented
to Milam county October 10, A. D. 1860.

Plaintiff claimed that the title set up by certain of the
defendants was, by the judgment of the supreme court,
rendered May, A. D. 1870, determined in favor of Milam
county, and claimed that the defendants were estopped
from denying or setting up title.

T. P. Randall and W. H. Beaumont intervened and
claimed part of the land sued for.

The defenses relied upon were:

1st. General demurrer.

2d. Not guilty.

3d. The invalidity of plaintiff's title, because plaintiff
did not have the field notes returned to the general land
office before the 31st day of August, 1853.

4th. Pleading title in themselves to their respective claims; first, under the act of the legislature of Texas, of the 21st day of July, A. D. 1870, entitled " An act authorizing and requiring the commissioner of the general land office to issue patents on certain settlers' claims of one hundred and sixty acres of land each, on payment of usual office fees and fifty cents per acre.

Intervenors Randall and Beaumont and certain others claimed under locations made by virtue of certificates, one the J. H. Davis bounty for one thousand two hundred and eighty acres, and the other for six hundred and forty acres issued to the S. A. & M. G. R. R. Co., located after the issuance to plaintiff of a patent to the land sued for, claiming plaintiff's patent had been cancelled and reissued on another location, at the instance of plaintiff's agent, one J. D. McCamant.

The court sustained defendants and intervenors' general demurrer to plaintiff's petition, and overruled plaintiff's general and special exceptions to defendants' answer and to the plea of intervention filed by Randall and Beaumont. Plaintiff filed a trial amendment.

Verdict and judgment for defendants and intervenors for the land claimed by them respectively.

In addition to facts stated in the opinion, it was admitted on the trial that J. D. McCamant, under whom six of the defendants claimed, located a San Antonio & Mexican Gulf Railroad Company six hundred and forty acre certificate on the land claimed by the intervenors, which was a part of the land in controversy and covered by plaintiff's patent, and was patented to McCamant, as assignee of the railroad company, on the 12th day of October, A. D. 1872.

It was proven on the trial, by R. G. Peters, that after the supreme court made its decisions, in 1870, in a former suit between Milam county and the settlers for the land in controversy, he leased a part of the land claimed by

plaintiff, and which is covered by the location made by J. D. McCamant, for himself and his boys; and that one of his boys went on the land under this lease in the year 1871 or 1872, and was on the same — the part called the J. H. Davis survey — when J. D. McCamant made the surveys on the J. H. Davis bounty warrant, and on the San Antonio & Mexican Gulf six hundred and forty acre certificate; that both surveys were made by J. D. McCamant at the same time, and that he told said McCamant, on that day, that he and his boys were claiming the land as Milam county school land, under a lease from the county, and had made their surveys and selections, and to go away and let them alone.

It was proved on the trial that the J. H. Davis survey was made prior to the cancellation of plaintiff's patent.

It was further established that J. D. McCamant was the agent of Milam county to collect rents and procure patents on unpatented land for the county.

Milam county had tenants on the land covered by the S. A. & M. G. R. R. six hundred and forty acre certificate, from 1869 up to the date of trial. The defendant, J. D. McCamant, before the cancellation of plaintiff's patent, stated that he did not know whether he would get patents on the Milam county school lands or not; that his agents at Austin were altogether too slow; that if he was at Austin, he would give one of the deputies in the land office fifty dollars, and have the patent out and gone before any one knew it, but it would not do to fool with old man Kuechler — he was too honest.

_J. C. Terrell, A. M. Carter_ and _Smith & Jarvis_, for appellant.

I. The court erred in sustained defendants' demurrer to plaintiff's original and amended petition.

II. The court erred in not sustaining plaintiff's special

exceptions to defendants' amended answer, and to the plea of intervention filed by T. P. Randall and W. H. Beaumont.

III. The court erred in charging, "if plaintiff, Milam county, had the land surveyed in 1849, and the field notes thereof recorded in Milam county in 1858, and thereafter duly certified by the county clerk of Milam county, and returned to and filed in the general land office, and that if, on the 10th day of October, 1860, the commissioner of the general land office issued to plaintiff a patent to said land, that therefore the field notes, survey and patent to said land were null and void."

IV. The legislature of the state of Texas cannot divest the counties of their school lands, granted to them for educational purposes. Galveston County v. Tankersley, 39 Tex., 657; Bell County v. Alexander, 22 Tex., 359; Kuechler v. Wright, 40 Tex., 606; Fannin County v. Riddle, Texas Law Journal, vol. 2, No. 38, p. 598; Dartmouth College v. Woodward, 4 Wheat., 577; Wilcox v. Jackson, 13 Pet., 498; Const. of U. S., art. I, sec. 10; Cooley's Constitutional Limitations, 273-275.

V. Where a question concerning the title to real estate has been finally passed upon by the highest court in the state of Texas, the legislature of the state has no constitutional right to pass any law, or grant any relief, which would change the condition of the litigant parties as fixed by the court in such a case, whether the decision be right or not. Art. II, sec. 1, Const. 1868-9; Sedgwick on the Construction of Statutory and Constitutional Law, 128-145; Cooley's Constitutional Limitations (3d ed.), 87-116; Denny v. Mattoon, 2 Allen, 361; Hadfield v. Mayor, etc., 6 Robt., 501; Davis v. Menasha, 21 Wis., 491; Atkinson v. Dunlap, 50 Me., 111; Taylor v. Place, 4 R. I., 324.

VI. The commissioner of the general land office has no authority to cancel a patent for conflict, except when the patent is returned for cancellation by the owner, nor un-

less there is a real actual conflict with an older equitable
or legal title.

A. J. Hood and McCall & McCall, for appellees.

I. The act of July 21, 1870, under which appellees pur-
chased and obtained patents, was not in violation of either
the constitution of the United States or the then existing
constitution of this state. See Const. of 1869, in force
July 21, 1870, art. IX, sec. 8; Fannin County v. John L.
Riddle, Tex. Law Journal, vol. 2, No. 38, p. 598; Bass v.
Fontleroy, 11 Tex., 706; San Antonio v. Odin, 15 Tex.,
544. See act July 21, 1870. But suppose our state con-
stitution and our state decisions silent on the ques-
tion. What then? The act of July 21, 1870, was
constitutional and valid. See Rule of Construction,
Cooley's Con. Lim., 3d ed., pp. 181, 182. Then what
are counties? and what power has the legislature of a
state over them? See 3 Pars. on Con., 6th ed., 528; Lara-
mie County v. Albany County, 92 U. S. (2 Otto), 308,
311, bottom; Darmouth College v. Woodward, 4 Wheat.,
(Curtis), 485; 1 Dillon on Mun. Corp., sec. 10; id., secs. 38,
39; Cooley on Const. Lim., 240; 49 Mo., 236; 26 Ark., 37;
114 Mass., 214; 16 Kan., 498; 25 Ill., 187; 1 Humph.
(Tenn.), 48; 12 Ill., 8; 1 Greenl. Ev., art. 331 (9th ed.);
10 How., 511; 11 Pet., 539; 4 Ohio, 42; 13 Wend., 325.

II. Milam county, in regard to school lands pertaining
to that county on the 21st day of July, 1870, was a
creature and mere agent of the state, and is now a mere
agent of the state, and she cannot in the courts of the
state do that which the state says she shall not do, viz.:
recover the lands and oust the appellees therefrom. As
to capacity in which counties hold: They at farthest held,
and now hold alone, in trust, subject to the legislative
will of the state. See Const. of 1869, art. IX, sec. 8; see
present State Const., art. VII, latter part of sec. 6; also see
Fannin County v. John L. Riddle, Texas Law Journal,

vol. 2, No. 38, p. 598. Then, as to what the legislative will of the state is and was, see act of July 21, 1870.

III. On the 26th day of August, 1856, the several parcels of land embraced in the respective patents of these appellees were parts and parcels of the public domain of the state, and had not been by the state, through any action of Milam county, severed and set apart for educational purposes.

IV. The issuance of a patent is a ministerial act, and is void if issued on invalid field notes. See State v. Delesdenier, 7 Tex., 109; Russell v. Mason, 1 Tex., 721; Kimmel v. Wheeler, 22 Tex., 84.

V. If it be shown by the record in any case that the court in fact acted, in rendering the judgment, without jurisdiction over either the person or thing, such judgment is a nullity, and the question of jurisdiction as to that particular judgment is in all time ever thereafter an open one, even to collateral attack. See Freeman on Judgments, 2d ed., secs. 116, 117, 120, 263, 266; Horan v. Wahrenberger, 9 Tex., 319; Elliot v. Piersol, 1 Pet., 328, 340; Voorhees v. Bank of the U. S., 10 Pet. 474; Williamson v. Berry, 8 How., 540; Webster v. Reed, 11 How., 437; 13 Pet., 499; 3 How., 750; C. & H.'s Notes to Phillips' Ev., 206, 214; 21 Tex., 163; 10 Tex., 140; 9 Tex., 294; 12 Tex., 99; 6 Tex., 242. Also see Milam County v. Robinson, 47 Tex.; Freeman on Judgments, 2d ed., sec. 141; Ford v. Doyle, 37 Cal., 346; Moseley v. Cocke, 7 Leigh, 225.

BONNER, ASSOCIATE JUSTICE.— In December, 1849, Milam county had two of the four leagues of land to which she was entitled, as school lands, surveyed in Milam land district, now Hood county. These are the subject matter of this and the suit of Milam County v. Blake et al., also pending before us. Both were brought by Milam county against a number of defendants who claimed adversely to her.

The field notes of the league in controversy in this suit were duly returned and approved by the district surveyor within a reasonable time after the survey was made. They were recorded in the office of the clerk of the county court of Milam county May 11, 1858, returned to the general land office June 16, 1858, and patent issued thereon October 10, 1860. This patent embraced the land in controversy.

Subsequently to August 31, 1853, the date at which, under act February 10, 1852 (Pasch. Dig., art. 4562), the field notes of surveys made previously to the passage of that act should have been returned to the general land office, and before October 10, 1860, the date of the issuance of this patent, the claims of certain of the defendants who derive title as pre-emptors had their origin by settlement upon this league. Patents were refused upon their surveys because in conflict with it.

February 24, 1866, Milam county instituted in the district court of Johnson county, in which the land was situated, action of trespass to try title against a number of these settlers, including some of the defendants to this suit, which resulted, April 10, 1867, in a judgment against Milam county in favor of those defendants who set up claim to the land.

April 27, 1870, this judgment below was, on appeal, reversed, and judgment rendered by this court in favor of Milam county for the land in controversy, reported as Milam County v. Robertson, 33 Tex., 366.

Afterwards, July 21, 1870, the legislature of the state of Texas passed an act, in the nature of a special act, for the relief of the settlers, including the defendants in the above mentioned suit, on the Milam county school lands in Hood county, virtually reversing and setting aside the former decision of this court, and requiring the commissioner of the general land office to issue patents to such of these settlers as were upon the land previously to June 16,

1858, the date of the return of the field notes by Milam county to the general land office.   Pasch. Dig., art. 7064.

In accordance with this act, patents were issued to part of the land in controversy, under which six of the defendants in this suit, eight in the other, claim title.   In addition to this claim, it is also contended by them, and by all the defendants, that Milam county had forfeited her surveys by failure to have the field notes recorded in the proper county and returned to the general land office, under the provision of our statutes.   Pasch. Dig., arts. 3466, 4562.

September 25, 1871, the county court of Milam county, by order duly entered of record, appointed one John D. McCamant agent for the county, to collect and receive the rents due or to become due on her school lands, and "to institute any legal proceedings that may be necessary for the collection of said rents, and to procure patents to all school lands belonging to Milam county which are not yet patented."

Afterwards, September 23, 1872, McCamant had the patent cancelled, which previously, on October 10, 1860, had been issued to Milam county for the league in controversy, and on the same day of its cancellation had a new patent issued to Milam county, so as not to include these six pre-emption surveys patented by virtue of the special act of July 21, 1870, and which were embraced in the first patent; and so as not to include two surveys which McCamant had previously caused to be made for his own benefit, while acting as agent for the county, and when the original patent to Milam county was still outstanding. One of these two surveys in favor of McCamant was made by virtue of the J. H. Davis bounty warrant for 1,280 acres, which conflicts both with the league in controversy in this suit, and with the adjoining league in controversy in Milam County v. Blake et al.

The other of these two surveys was made by virtue of a

640 acre certificate granted to the San Antonio & Mexican Gulf Railroad, and conflicts with the league in litigation in this case.

McCamant procured patents upon both these surveys.

The defendants, Patterson, and the intervenors Beaumont and Randall, deraign title under McCamant to lands embraced within these two surveys; the intervenors under quit-claim deed.

On the trial below, on verdict of a jury, judgment was rendered against Milam county, from which this appeal is taken.

The court charged the jury in effect, that the act of July 21, 1870, was constitutional, and that the patents which issued to the defendants by virtue of it, divested the titles to the lands embraced by them out of Milam county, and vested it into the several patentees, "the judgment of the supreme court to the contrary notwithstanding."

It has been decided by this court that a valid location or survey of land is a vested right, and that the legislature does not retain the absolute disposition of the land until the patent issues.  Hamilton v. Avery, 20 Tex., 635; Sherwood v. Flemming, 25 Tex. Sup., 408.

It is contended by defendants, that counties being mere political subdivisions of the state, cannot, as against the will of the legislature, hold lands which have been previously donated to them by the state for the purposes of public education.

By our statutes, counties are bodies corporate and politic, and have capacity to take and hold title in fee to real and personal property.  Pasch. Dig., arts. 1044, 1051; R. S., arts. 676, 680; Bell Co. v. Alexander, 22 Tex., 359; Baker v. Panola Co., 30 Tex., 86.

That they could acquire title to their school lands donated by the state, we think evident from our several constitutional and statutory provisions on this subject.

Section 5, Gen. Prov. Constitution of the Republic, required that congress, as soon as circumstances would permit, should provide by law a general system of education. Accordingly, the act of January 26, 1839, was passed, donating for a general system of education three leagues of land to each county, which by act of January 16, 1850, was increased to four leagues; requiring the counties to have the same "surveyed and set apart" at their own expense. Pasch. Dig., arts. 3464, 3468; Wilcox v. Jackson, 13 Pet., 498.

Section 4, article X, constitution 1845, provided "that the several counties in this state which have not received their quantum of lands for the purposes of education, shall be entitled to the same quantity heretofore appropriated by the congress of the republic of Texas to other counties."

In Bell County v. Alexander, 22 Tex., 363, it is said that this recognized and confirmed the grants of school lands made by the above statutes.

Although under section 6, article X, constitution 1866, the legislature had the right to control these school lands, and to provide terms and regulations for their sale, the proceeds to be added to the public school fund of the state, yet it was provided that "each county shall receive the full benefit of the interest arising from the proceeds of the sale of the lands granted to them respectively." It was further provided that the lands which had already been patented to the counties should not be sold without their consent.

Section 8, article IX, constitution 1869, gave similar control over these lands to the legislature, omitting the proviso that the interest on the proceeds should go to the counties respectively.

In commenting upon this provision, in Worley v. The State, it is said that although such proceeds are placed in the general school fund without any reservation as in the

constitution of 1866, yet it did not divest the title of the counties to their school lands. 48 Tex., 1; Galveston County v. Tankersley, 39 Tex., 657; Kuechler v. Wright, 40 Tex., 606.

Section 6, article VII, constitution 1876, declaratory of the will of the people of the state in convention assembled, as to the *status* of the title to such property, provides that "all lands heretofore or hereafter granted to the several counties of this state for education or schools, are of right the property of said counties respectively to which they were granted, and the title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county."

Taking these several provisions together as construed by the decisions of this court, it would seem clear that it was the intention of the state to vest the right of property in the school lands in the several counties respectively.

Counties in their relation toward the state may be viewed in a two-fold aspect: one, which pertains to their political rights and privileges; the other, to their rights of property.

Over the former, the legislature as the representative of state sovereignty can exercise absolute power unless restricted by the organic law. If it could not exercise such power over the delegated political rights and privileges of counties, which are subdivisions of state governmental authority, we might have a system of petty discordant governments within a government, without unity of design or action.

Hence the political rights and privileges delegated to counties are not within the constitutional prohibitions against retroactive laws and those which impair vested rights. Cooley's Const. Lim., 237; People v. Morris, 13 Wend., 331.

A different principle, however, obtains as regards the

rights of counties to property which they may acquire. Such rights, as a general rule, are protected by the same constitutional guarantees which shield the property of individuals.  Cooley's Const. Lim., 237, 277; Grogan v. San Francisco, 18 Cal., 590.

Even though the state itself may have donated the property, it thereby becomes such vested right as will be protected. . Wade on Retroactive Laws, § 56; Grogan v. San Francisco, 18 Cal., 590.

If given for a specific object, the state may very properly, as in the instance under consideration of our school lands granted to counties, exercise such supervision and control over the actions of the counties as to compel the proper execution of the trust, or prevent its being defeated; but it is believed that this control, unless by the consent of the county, should be subject to the restriction, that the purpose for which the property was originally acquired shall, as far as circumstances will admit, be kept in view; and that it shall not arbitrarily be diverted, as in the case before us, to private parties and to a wholly different purpose.  Cooley's Const. Lim., 238, and authorities in note 3.  In relation to these school lands, the county, through agents for the state, may be compared to agencies coupled with an interest, which cannot be revoked at the pleasure of the principal.

It does not become necessary in the present case to decide how far the legislature might, in the exercise of its legitimate power over the political rights and privileges of counties, so far change their boundaries, or even abolish the counties altogether, as to modify or destroy their rights to public property which had been given them by the state for a use and purpose which then no longer existed.  Bass v. Fontleroy, 11 Tex., 698.

Here the question in this connection is, that if the existing county of Milam had acquired the right to the lands in controversy, for public educational purposes,

under a constitutional and statutory right common to all the counties of Texas, could the state, by the legislative act of July 21, 1870, arbitrarily take from the county this land and give it to private parties and for a private purpose?

That the state could not do this because it would impair a vested right, we think beyond question. This act is subject to the further constitutional objection, that it is judicial and not legislative in its character.

Although the legislature by express provision is given the right to judge of the qualifications and election of its own members, and perform other judicial acts for its proper government, as to punish disorderly conduct, yet, under our system of government, unlike the parliament of Great Britain, it has no general judicial powers.

As said by Mr. Cooley, "the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review, to which parties might appeal when dissatisfied with the rulings of the courts." Cooley's Const. Lim., 94; Wade on Retroactive Laws, § 31; Denny v. Mattoon, 2 Allen, 361.

It is also contended by defendants that the right of Milam county to this land was forfeited, by the delay to have the field notes recorded in the office of the county clerk, and the failure to have them returned to the general land office by the 31st day of August, 1853. Pasch. Dig., arts. 3466, 4562.

That the mere failure of the counties to comply with the provisions of these statutes as to record and return of field notes, would not defeat the title to their school lands, was decided by this court in the former suit in which this question was raised upon this very title, and to which

some of the present defendants were parties. 33 Tex., 366.

That decision was subsequently approved by this court in Fannin Co. Bank *v.* Riddle, 51 Tex., 360; Henderson Co. *v.* Shook, 51 Tex., 370.

It would seem that the legislature did not consider the failure to return the field notes to the general land office by the 31st day of August, 1853, caused a forfeiture, as in this act of July 21, 1870, it was provided "that nothing in this act shall be construed so as to authorize the issuance of a patent on any settler's claim situated on either of said two leagues, when the settlement thereof did not actually take place before the 16th day of June, A. D. 1858," the date when the field notes were returned to the general land office. Pasch. Dig., 7064.

If Milam county had appropriated the land by a valid location and survey, which as to the return of the field notes did not come within the provisions of the act of February 10, 1852 (Pasch. Dig., art. 4562), then a subsequent locator must, at his peril, take notice of the rights of the county. Wyllie *v.* Wynne, 26 Tex., 42.

It is also contended by defendants that Milam county, through her agent, McCamant, voluntarily had the patent which issued upon the original survey cancelled, and the second one issued for lands which did not include those in controversy.

We are of opinion that the facts as presented by the record do not show any sufficient authority to McCamant to have the patent cancelled so as to bind the county; and further, that the patents procured by him for his own use and benefit on the Davis bounty warrant and the railroad certificate were obtained in violation of the trust confided to him, and were fraudulent as against the county. We are also of opinion that all the parties who claim under McCamant are chargeable with notice of his want of authority, and by the cancelled patent, former suit and

judgment, and act of July 21, 1870, with notice of the claim of Milam county to the land in controversy. As to those parties who derive title under him by quit-claim deed, this of itself would prevent them from being *bona fide* purchasers. Rodgers *v.* Burchard, 34 Tex., 441; Hamman *v.* Keigwin, 39 Tex., 35; Carter *v.* Wise, 39 Tex., 274; Harrison *v.* Boring, 44 Tex., 256.

REVERSED AND REMANDED.

[Opinion delivered December 21, 1880.]