PARKER COUNTY, the State of Texas, Harris Worcester, Waymon Wright, Mack Dobbs, Harold Anderson, Mark Riley, William Cantrell and Judy Spradlin, Appellants,

v.

WEATHERFORD INDEPENDENT SCHOOL DISTRICT and City of Weatherford, Appellees.

No. 2–87–084–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 3, 1989.

Rehearing Denied Sept. 13, 1989.

---

1. The record does not reflect that the appellant has been indicted.

Jim Mattox, Atty. Gen., Mary Keller, Harriet D. Burke, and Bill Kimbrough, Asst. Attys. Gen., Austin, for the State of Tex.

William H. Cantrell, Weatherford, for Parker County, et al.

Chappell & Handy, P.C., David F. Chappell and Brian J. Brandstetter, Fort Worth, for Weatherford I.S.D.

Zellers & Zellers, Walter E. Zellers and Catherine Zellers, Weatherford, for City of Weatherford.

Before HILL, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by Parker County and The State of Texas from an adverse judgment in a declaratory judgment action brought by the Weatherford Independent School District and City of Weatherford to declare unconstitutional TEX.TAX CODE

ANN. sec. 6.26 (Vernon Supp.1989), and to invalidate an election to determine if the county tax assessor-collector should assess and collect property taxes for all taxing units in the appraisal district for Parker County.

We reverse and render.

At the trial before the court, essentially all of the evidence consisted of documents and stipulations which are now summarized. In December of 1986, the Parker County Commissioners Court called an election under section 6.26 of the code to place before the qualified voters of the appraisal district for the county a measure to consolidate the tax assessing and collecting functions for all taxing units located within the appraisal district into the county assessor-collector's office. This was done in response to election petitions presented to the county clerk by qualified voters. The consolidation election was held on January 17, 1987, and the measure, which sought "requiring the Parker County Tax Assessor–Collector to assess and collect property taxes for all taxing units in the Appraisal District" was passed by a majority of the votes cast. The measure did not pass by a majority of the votes cast within the boundaries of either Weatherford or Aledo independent school districts.

At the time of trial, except for the City of Springtown, all of the affected taxing units contracted with the Central Tax Authority of Parker County[1] to assess and collect their ad valorem taxes. The contract had been in effect since the 1981 tax year and was in effect at the time of the election. It was stipulated to be valid, binding, and authorized by law.

From its findings of fact, the court concluded that section 6.26 of the code is in irreconcilable conflict with: article XI, section 5; article III, section 64; article VII, section 3–b; and article I, section 16 of the Texas Constitution. Parker County presents error as to each such conclusion of the court, and intervenor, State of Texas, presents a single point of error as to

the court's declaration that section 6.26 is unconstitutional.

Pertinent provisions of the section are as follows:

### Sec. 6.26. Election to Consolidate Assessing and Collecting Functions

(a) The qualified voters residing in an appraisal district by petition submitted to the county clerk of the county principally served by the appraisal district may require that an election be held to determine whether or not to require the appraisal district, the county assessor-collector, or a specified taxing unit within the appraisal district to assess, collect, or assess and collect property taxes on property appraised by the district for all taxing units.

(b) The qualified voters of a taxing unit that assesses, collects, or assesses and collects its own property taxes by petition submitted to the governing body of the taxing unit may require that an election be held to determine whether or not to require the appraisal district, the county assessor-collector, or another taxing unit that is assessing and collecting property taxes to assess, collect, or assess and collect the unit's property taxes.

TEX.TAX CODE ANN. sec. 6.26.

We pause here to focus attention upon the precise activities included in the statutory scheme embodied in the Texas Tax Code for assessment of ad valorem taxes. The first step in the process is the preparation, by the appraisal district, of an appraisal roll listing all property taxable by a taxing unit and its appraised value. From the appraisal roll, the assessor for a taxing unit determines the total appraised value, assessed value, and taxable value of property taxable by the unit and submits such information to the governing body of the unit, whereupon the unit's officer or employee calculates a tax rate designed to impose the amount of property taxes needed by the taxing unit. The governing body of the unit adopts a tax rate for the current tax year and notifies the assessor of the rate adopted. The assessor then calculates

1. The Board of Directors of the appraisal district created by section 6.01, Texas Tax Code, has chosen as a convenience the name "Central Tax Authority of Parker County, Texas."

the tax imposed on each property, enters such tax in the appraisal roll and submits it to the governing body for approval. The appraisal roll with amounts of tax entered, upon approval, constitutes the unit's tax roll. In the event that there is an error in the mathematical computation of a tax, only the governing body may order a change in the tax roll. *See* TEX.TAX CODE ANN. secs. 26.01, 26.04, 26.05, 26.-09, and 26.15 (Vernon 1982 and Supp.1989). This statutory scheme places full power and discretion in the governing body to impose a rate of tax required to produce the amount of income needed to meet its lawful purposes, with the aid of data and calculations provided by an assessor, based upon appraisals provided by the appraisal district. Inherent authority of the taxing unit is not impaired by the transfer of its assessing and collection functions elsewhere.

We will discuss the application of constitutional provisions to section 6.26 in the order presented by the points of error. The first deals with article VII, section 3–b of the constitution:

> **Sec. 3–b. Independent school districts and junior college districts; taxes and bonds; changes in boundaries**
>
> Sec. 3–b. No tax for the maintenance of public free schools voted in any independent school district and no tax for the maintenance of a junior college voted by a junior college district, nor any bonds voted in any such district, but unissued, shall be abrogated, cancelled or invalidated by change of any kind in the boundaries thereof. After any change in boundaries, the governing body of any such district, without the necessity of an additional election, shall have the power to assess, levy and collect ad valorem taxes on all taxable property within the boundaries of the district as changed ... in the amount, at the rate, or not to exceed the rate, and in the manner authorized in the district prior to the change in its boundaries....

TEX.CONST. art. VII, sec. 3–b.

The school district interprets the above provisions to give it the power of assessing and collecting its own taxes, and argues that where rights have been fixed under a constitutional provision, the legislature is without power to destroy or impair such rights or to enact any law contrary to a provision of the constitution. In reply, Parker County and the State point to the necessity of considering other sections of article VII in conjunction with section 3–b.

Article VII, section 1 is as follows:

> **Sec. 1. Support and maintenance of system of public free schools**
>
> Section 1. A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

TEX.CONST. art. VII, sec. 1. Section 2 deals with the perpetual school fund, a subject not pertinent to our inquiry. Pertinent provisions of section 3 follow:

> **Sec. 3. Taxes for benefit of schools; school districts**
>
> [T]he Legislature may also provide for the formation of school district [sic] by general laws ... and the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts ... and the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts°... for the further maintenance of public free schools ... provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax....

TEX. CONST. art. VII, sec. 3. By amendment to article VII, in 1909, all school districts previously formed were validated and the following provision made for payment of outstanding bonded indebtedness:

> **Sec. 3a. Validation; formation of districts; bonds; levy of tax authorized; election of trustees**
>
> ....
>
> All bonds heretofore issued by any such districts which have been approved by the Attorney General and registered

by the Comptroller are hereby declared to be, and at the time of their issuance to have been, issued in conformity with the Constitution and laws of this State, and any and all such bonds are hereby in all things validated and declared to be valid and binding obligations upon the district or districts issuing the same.

Each such district is hereby authorized to, and shall, annually levy and collect an ad valorem tax sufficient to pay the interest on all such bonds and to provide a sinking fund sufficient to redeem the same at maturity, not to exceed such a rate as may be provided by law under other provisions of this Constitution.

TEX.CONST. art. VII, sec. 3a (1909, repealed 1969). Section 3a was among fifty-two sections of the constitution repealed in 1969 as "obsolete, superfluous and unnecessary" in a constitutional election resulting from House Joint Resolutions, No. 3, Act 1969, 61st Leg., p. 3230 which included the statement "the repeal of these sections shall not in any way make any substantive changes in our present constitution."

The power of a school district to levy taxes was discussed by the San Antonio Court of Appeals. In *Manges v. Freer Indep. School Dist.*, 653 S.W.2d 553, 558 (Tex.App.—San Antonio 1983), *rev'd on other grounds per curiam*, 677 S.W.2d 488 (Tex.1984):

The major premise of our holding is that "... [a]n Independent School District has no inherent or implied authority to levy taxes for the maintenance of schools...." *Wingate v. Whitney Independent School District*, 129 S.W.2d 385 (Tex.Civ.App.—Waco 1939, no writ). The authority to levy taxes must arise from an affirmative grant of power found in the constitution. *Adams v. Miles*, 35 S.W.2d 123 (Tex.Comm.App.1931); *Crabb v. Celeste Independent School District*, 105 Tex. 194, 146 S.W. 528 (1912); *City of Fort Worth v. Davis*, 57 Tex. 225 (1882); *see also Shepherd v. San Jacinto Junior College District*, [363 S.W.2d 742 (Tex.1963)] (wherein the court discusses the legislature's power to levy *ad valorem* taxes.) The affirmative, *and exclusive*, grant of power allowing a school

district to levy the taxes in question is article VII, sec. 3 of the Texas Constitution. *Crabb v. Celeste Independent School District*, [105 Tex. 194, 146 S.W. 528 (1912)].

*Manges*, 653 S.W.2d at 558 (emphasis in original). In reversing *Manges*, our supreme court did not disturb the above quoted statement of the law, but differed with the court of appeals as to its application of section 3-b to the facts in the case. *See Freer Mun. Ind. School Dist. v. Manges*, 677 S.W.2d 488 (Tex.1984) (per curiam). Referring to section 3-b, the supreme court held as follows:

This constitutional provision was added in 1966 to eliminate the need for new voter approval of bonds and taxes when authorized changes are made in the boundaries of school districts. Once taxation has been authorized, a change in the school district's boundaries has no effect upon the power to tax.

*Id.* at 490.

▆▆▆▆ The school district argues that the result of the section 3-b amendment and the repeal of section 3a, was to grant to independent school districts the power to assess, levy, and collect taxes for all purposes. In the light of the supreme court's above stated determination of the purpose of section 3-b, we cannot agree. We hold that article VII, section 3-b does not grant to independent school districts the general power of assessing and collecting its own taxes for all purposes and consequently there is no irreconcilable conflict between it and section 6.26 of the tax code. Point of error number one is sustained.

### Article XI, section 5

This section of the constitution, after providing for the adoption of home rule charters for certain cities, further provides "said cities may levy, assess and collect such taxes as may be authorized by law or by their charters." TEX. CONST. art. XI, sec. 5. It is the contention of City of Weatherford that this section specifically grants the power to assess and collect tax-

es and that the legislature is without power to destroy or impair such right of the city.

Parker County's position is based upon the belief that the phrase "as may be authorized by law or by their charters" refers not to the nature of taxes which may be assessed, but to the very power of assessing and collecting taxes. Such interpretation results in the meaning expressed as follows: "said cities may levy, assess and collect, only as authorized by the legislature, such taxes as may be authorized by law or by their charters." We need not decide that question because it appears that the legislature is empowered to limit the power of cities to levy, assess, and collect taxes. *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641 (Tex.1975). In that case it was necessary to resolve a conflict between the power of the city to regulate utility rates as against that of the river authority to establish rates for electricity provided by it within and without the boundaries of the authority and specifically to residents of San Marcos. There it was said as follows:

A home rule city derives its power not from the Legislature but from Article XI, Section 5, of the Texas Constitution. Accepting cities and towns of more than 5,000 population have "full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers." *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282.

and,

The powers of home rule cities are subject to and may be limited only by their charters or by the Constitution or by general law. In this instance there is no limitation in either the Constitution or the charter, and the parties agree that the case turns on whether Section 8 of the LCRA Act, Article 8280–107, constitutes a legislative limitation upon the power of San Marcos as a home rule city with respect to LCRA rates.

*Id.* at 643–44. Holding that the Lower Colorado River Authority Act did not constitute a legislative limitation upon the power of San Marcos as a home rule city with respect to LCRA rates, the court wrote as follows:

A limitation on the power of home rule cities by general law or by charter may be either an express limitation or one arising by implication. "Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end." *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645. The intention of the Legislature to impose such limitations must "appear with unmistakable clarity." *City of Sweetwater v. Geron*, Tex.Sup., 380 S.W.2d 550.

*Id.* at 645.

 In the case before us, we hold that the Texas Tax Code constitutes an implied limitation, by general law, upon the power of home rule cities to assess and collect taxes, without affecting the cities' power to levy taxes by establishing the tax rate and approving the city tax roll. Furthermore, the implied limitation on the assessing and collection functions of the taxing units is clearly expressed in the provisions of section 6.26 which allows the electorate to designate the agency most suitable for performing those functions. Consequently, we do not find section 6.26 to be in conflict with article XI, section 5. Point of error two is sustained.

### Article I, section 16

The County contends that section 6.26, as applied to the contract between the city, school district, and Central Tax Authority of Parker County, does not constitute an unconstitutional impairment of the obligations of that contract in derogation of the constitutional provision following:

**Sec. 16. Bills of attainder; ex post facto or retroactive laws; impairing obligation of contracts**

Sec. 16. No bill of attainder, ex post facto law, retroactive law, or any law

impairing the obligation of contracts, shall be made.

TEX. CONST. art. I, sec. 16.

■ The first article of our constitution is designated "Bill of Rights." Just as section 16 guards against ex post facto laws, retroactive laws, and laws impairing the obligation of contracts, section 19 of article I provides protection against the deprivation of life, liberty, property, privileges or immunities, and disfranchisement except by due course of law.[2] It was held that the protection provided by section 19 is not available to the Texas State Bar and its Grievance Committees in *McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ. App.—Waco 1974) (orig. proceeding). There it was pointed out that the State Bar and Grievance Committees are administrative agencies and it was said "[a]n agency created by a State for the better ordering of government has no privileges, immunities, or rights under the State and Federal Constitutions which it may invoke in opposition to the will of its creator." *Id.* (citations omitted). In other words, a State has no standing to assert that one of its very own legislative enactments denies it constitutional due process or deprives it of equal protection of the laws. The same rule applies to the State's agencies. *Id. See also Collier v. Poe,* 732 S.W.2d 332, 344 (Tex. Crim.App.1987) (due process and due course of law are guarantees to citizens and not governments or their agencies).

■ In the absence of authority to the contrary, we are constrained to apply the rationale of the above authorities to the portion of the Bill of Rights expressed in article I, section 16. We hold, therefore, that state agencies have no standing to assert that a legislative enactment impairing the obligations of a contract between state agencies is unconstitutional in violation of the provisions of article I, section 16 of the Texas Constitution. The contracts in question were between the Weatherford Independent School District and the City of Weatherford and the Central Tax Authori-

ty of Parker County, each of which is a governmental subdivision or agency of the state. *Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978) (school districts); *Texas Nat'l Guard Armory Board v. McCraw,* 132 Tex. 613, 631, 126 S.W.2d 627, 638 (1939) (city); TEX.TAX CODE ANN. sec. 6.01(c) (Vernon 1982) (appraisal district). Consequently, the trial court erred in ruling the statute unconstitutional because it impaired the obligations of the contracts. Point of error three is sustained.

### *Article III, section 64*

The County's fourth point of error asserts that the trial court erred in holding section 6.26 to be in violation of TEX. CONST. art. III, sec. 64, which states:

**Sec. 64. Consolidation of governmental offices and functions in counties and political subdivisions**

Sec. 64. (a) The Legislature may by special statute provide for consolidation of governmental offices and functions of government of any one or more political subdivisions comprising or located within any county. Any such statute shall require an election to be held within the political subdivisions affected thereby with approval by a majority of the voters in each of these subdivisions, under such terms and conditions as the Legislature may require.

(b) The county government, or any political subdivision(s) comprising or located therein, may contract one with another for the performance of governmental functions required or authorized by this Constitution or the Laws of this State, under such terms and conditions as the Legislature may prescribe. No person acting under a contract made pursuant to this Subsection (b) shall be deemed to hold more than one office of honor, trust or profit or more than one civil office of emolument. The term "governmental functions," as it relates to counties, includes all duties, activities and operations of statewide importance in which the

2. TEX. CONST. art. I, sec. 19 provides:
 Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

county acts for the State, as well as of local importance, whether required or authorized by this Constitution or the Laws of this State.

*Id.* The County argues that section 6.26 complies with the mandate of this constitutional provision, despite the fact that it does not expressly require an election in each political subdivision affected by a consolidation election, inasmuch as it does not *foreclose* any political subdivision from conducting its own election on the issue of consolidation of assessment and collection functions. Further, the County argues that the remedy applied by the trial court in declaring section 6.26 unconstitutional was overbroad, and at most, the only necessary ruling was that section 6.26 had been improperly applied in the instant case and the election, as so conducted, was void and of no force and effect as to the "entities that disapproved said election." In the latter contention we find merit.

 In the case before us, the record presents the situation in which the governing body of the Weatherford Independent School District had availed itself of the opportunity provided by subsection (b) to contract with the Central Tax Authority for the Central Tax Authority to assess and collect its ad valorem taxes. As a result of the county-wide election, the will of the school district was thwarted and the function of tax assessing and collecting placed in the hands of the County Tax Assessor–Collector without a majority of the school district's voters having sanctioned the move. Such result is inimical to section 64(a) of the constitution and cannot be permitted to bind any taxing unit whose voters refused to approve the move. This conclusion, however, does not require a declaration that TEX.TAX CODE ANN. sec. 6.26 is unconstitutional, and we do not so declare. We do hold any application of the statute to be unconstitutional insofar as it deprives a majority of the voters of a taxing unit the right to provide for the consolidation of governmental functions as guaranteed by article III, section 64.

Having so held, we reverse the judgment of the trial court and render judgment that the election is valid and the results are binding on all taxing units within the Parker County Appraisal District except the Weatherford Independent School District, a majority of whose voters did not approve the measure put before them. Aledo Independent School District is not a party to this appeal, and we do not consider their status.