**NUECES COUNTY APPRAISAL DISTRICT, et al.,**
Appellants,

v.

**CORPUS CHRISTI PEOPLE'S BAPTIST CHURCH, INC., Appellee.**

No. 13–92–411–CV.

Court of Appeals of Texas,
Corpus Christi.

July 29, 1993.

Rehearing Overruled Sept. 15, 1993.

Kent M. Rider, Russell R. Graham, Calame, Linebarger, Graham & Pena, Austin, for appellants.

Daniel Jon Loomis, Charlotte A. Cover, David C. Gibbs, Jr., Gibbs & Craze, Conneaut, OH, Clyde J. Jackson, Jr., Law Office of Clyde J. Jackson, Jr., Corpus Christi, for appellee.

Dan Morales, Atty. Gen., Gregory E. Perry, Asst. Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Asst. Atty. Gen., Harriet D. Burke, Asst. Atty. Gen. Chief, Taxation Div., Austin, for interested party.

Before BENAVIDES,[1] KENNEDY and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

This appeal involves a constitutional attack on § 11.433 of the Texas Property Tax Code. Tex.Tax Code Ann. § 11.433 (Vernon 1992). In accordance with § 11.433, the trial court ruled that appellee, Corpus Christi People's Baptist Church was entitled to an ad valorem tax exemption for certain portions of its real property for tax years 1986 through 1989. See Tex.Tax Code Ann. § 11.20. The court specifically found that the statutory provision allowing late filings for religious exemptions does not violate the Texas Constitution. Appellants, the Nueces County Appraisal District, the Appraisal Review Board, and Nueces County (collectively referred to as "the County"), appeal from that judgment, arguing that § 11.433 violates the state constitutional prohibition against the forgiveness of taxes. See Vernon's Ann.Tex.Const. art. III, § 55 (1984). We agree with the County and reverse the trial court's judgment.

During the previous decade, the tax laws pertaining to exemptions for religious organi-

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

zations changed. As a result, in earlier years churches were automatically exempt from ad valorem taxation. At other times, they had the affirmative duty to file for their tax exemption. *See* Tex.Rev.Civ.Stat.Ann. art. 7150(1) (Vernon 1960) (*repealed by* Tex.Prop. Tax Code § 11.20 (Vernon 1992)); Tex.Tax Code Ann. § 11.43 (Vernon 1992). Because some churches did not stay abreast of the changes in the law, they lost their exemption by failing to file. The Legislature therefore enacted § 11.433 to enable them to regain their tax exemption. By this provision, the Legislature extended the time period for religious organizations to apply for property tax exemptions on property that would otherwise be taxable. The provision, which became effective September 1, 1990, reads as follows:

(a) The chief appraiser shall accept and approve or deny an application for an exemption under Section 11.20 after the filing deadline provided by Section 11.43 if the application is filed not later than December 31 of the sixth year after the year in which the taxes for which the exemption is claimed were imposed.

(b) The chief appraiser may not approve a late application for an exemption filed under this section if the taxes imposed on the property for the year for which the exemption is claimed are paid before the application is filed.

(c) If a late application is approved after approval of the appraisal records for the year for which exemption is granted, the chief appraiser shall notify the collector for each taxing unit in which the property was taxable in the year for which the exemption is granted. The collector shall deduct from the organization's tax bill the amount of tax imposed on the property for that year if the tax has not been paid and any unpaid penalties and accrued interest relating to that tax. The collector may not refund taxes, penalties, or interest paid on the property for which exemption is granted under this section.

(d) The chief appraiser may grant an exemption for property pursuant to an application filed under this section only if the property otherwise qualified for the exemption under the law in effect on January 1 of the tax year for which the exemption is claimed.

(e) An application may not be filed under this section after December 31, 1991.

The facts of this case are not disputed. The Church owns real property and improvements in Nueces County. A 24.33 acre section of the Church's property has always been exempted from taxation and is not the subject of this litigation. From January 1, 1984 through January 1, 1989, a remaining portion of the Church's real property was listed as taxable on the tax rolls, and the taxing authorities levied ad valorem taxes on this remaining property, which is the subject of this litigation. Effective January 1, 1990, the County granted the Church a religious exemption from taxation on this property. Still later in 1990, the Church applied under § 11.433 for a religious exemption for this property for tax years 1984–89. The County denied the Church's application, and the Church appealed. As a result of adjudication in a previous case, the Church abandoned its claim for exemption in 1984 and 1985, leaving at issue only the taxability of the property in years 1986–89. The County agrees that if, and only if, § 11.433 is constitutional, the Church is entitled to exemption for 1986–89. Since the Church's claim for exemption is based on § 11.433, it follows that if § 11.433 is unconstitutional, the Church is not entitled to exemption. The State of Texas intervened to defend the constitutionality of § 11.433.

As a threshold procedural issue, the Church and the State together argue that the County lacks standing to bring a constitutional challenge. They rely on a line of cases setting forth what they contend is a general rule that an agent or political subdivision of the state does not have standing to challenge the constitutionality of a statute. *See Deacon v. City of Euless,* 405 S.W.2d 59, 62 (Tex.1966); *see also Collier v. Poe,* 732 S.W.2d 332, 344 (Tex.Crim.App.1987), *app. dism'd for lack of federal question,* 484 U.S. 805, 108 S.Ct. 51, 98 L.Ed.2d 15 (1987); *Parker County v. Weatherford Indep. School Dist.,* 775 S.W.2d 881, 887 (Tex.App.—Fort Worth 1989), *rev'd on other grounds,* 794 S.W.2d 33 (Tex.1990); *McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ.App.—Waco

1974, no writ). We do not believe these cases establish an ironclad rule that a county may never attack the constitutionality of a state statute. Each of these cases specifically held that the political subdivision or state agency had no standing to bring constitutional challenges against a statute on grounds that the state entity was denied due process, equal protection, or that an obligation of a contract was impaired. Indeed, a political subdivision or county has been permitted to challenge the constitutionality of a legislative act. *See Weatherford,* 775 S.W.2d at 887; *see also Milam County v. Bateman,* 54 Tex. 153, 165–66 (1880).

■ In *Weatherford,* the court of appeals did not allow a contracts or due process challenge, but both the court of appeals and the Texas Supreme Court addressed and sustained the school district's claim that, as applied, a provision of the Tax Code conflicted with portions of the Texas Constitution. In *Milam County,* the county won its constitutional challenge to a legislative act because the act interfered with the county's title interest in real property. Because the statute offended the county's right to property, which was created by the state constitution and was not merely part of the county's *political* power, the county had standing to challenge. These cases indicate that when the state, county, or a political subdivision has a constitutionally created right, these entities will have standing to challenge a statute on grounds that it conflicts with such right. But when rights are afforded only to individuals rather than state entities, the entities have no standing to make constitutional claims against a state statute.

■ As discussed below, article III, section 55 of the Texas Constitution expressly prohibits the Legislature from releasing liabilities or obligations owed to the state or a county. This provision creates a constitutional right for the county to be free from

legislative enactments in violation of the provision. *See* VERNON'S ANN.TEX.CONST. art. III, § 55. Because this right inures specifically to the benefit of the County, the County is the proper party to bring this constitutional challenge against a legislative act which it contends abridges protections guaranteed it by our state constitution. *See Milam County,* 54 Tex. at 165–66. If the statute in question violates the state constitution, to deny the County the right to raise the constitutionality of the statute in the circumstances presented here would render the constitutional provision nugatory as it relates to the county. *See Ollivier v. State,* 22 Tex.Civ. App. 55, 54 S.W. 940, 943 (Tex.Civ.App.— Houston [1st Dist.] 1899), *aff'd by certified question to Texas Supreme Court,* 93 Tex. 201, 54 S.W. 943 (1900). Finally, appellants are the proper parties to bring such a challenge, inasmuch as these entities are the ones charged with duties under § 11.433 which would effectuate an unconstitutional legislative scheme. We hold that the County has standing to bring this constitutional attack.

By a single point of error, the County contends that § 11.433 violates art. III, § 55 of the Texas Constitution, which reads:

The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State *or to any county* or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years (emphasis ours).

■ Under this express provision of our State charter, the Legislature is without authority to release or extinguish, or to authorize the release or extinguishment, of debts or liabilities owed any county.[2] The provision's plain language prohibits the Legisla-

---

**2.** Our State Constitution declares that taxation is to be equal and uniform. Tex.Const. art. VIII, § 1(a). Art. III, § 55 was added to the State charter in 1876. Its purpose was to ensure equal and uniform taxation by preventing the legislature from relinquishing, at will, the liability of certain taxpayers. *See* TEX.CONST. art. III, § 55. Specifically, it was intended to end the practice

of canceling delinquent taxes, habitual to past Texas legislatures who frequently granted exemptions for individuals and railroads. VERNON'S ANN. TEX.CONST. art. III, § 55 (Interpretive Commentary). For more background on the development and purpose of this provision, we refer the reader to the entire interpretive commentary of art. III, § 55.

ture from canceling obligations or liabilities, the effect of which would be to diminish the public revenue.[3] Accordingly, this provision established a right in the State or its subdivisions to be free from any legislative action which would release or cancel debts, obligations, or liabilities owed them for less than ten years. We must therefore determine whether the ad valorem taxes at issue here constitute an indebtedness, liability, or obligation to the County and whether § 11.433 operates to forgive that indebtedness.

It is undisputed here that the taxes were levied and assessed. The Texas Property Tax Code provides that on January 1·of each year, a tax lien attaches to property to secure payment of all taxes, penalties, and interest ultimately imposed for the year on that property. TEX.TAX CODE ANN. §§ 32.01 (Vernon 1992). If the taxes are not paid by February 1 of the following year, the taxes are declared delinquent, suit may be filed to foreclose the tax lien, and penalties and interest begin to accrue. TEX.TAX CODE ANN. §§ 31.-02, 33.01, 33.41 (Vernon 1992). At the time the Legislature enacted § 11.433, the taxes on the Church's property for tax years 1986–89 were already due and payable, with penalties and interest accruing, but the taxes have not been delinquent for over ten years.

■ Delinquent taxes are unquestionably a "liability" under article III, section 55. *State v. Pioneer Oil & Ref. Co.*, 292 S.W. 869, 871 (Tex.Comm'n App.1927, holding approved); *Smith v. State*, 420 S.W.2d 204, 209 (Tex.Civ.App.—Austin 1967), *rev'd in part, affirmed in part*, 434 S.W.2d 342 (Tex.1968). Accordingly, we hold that the taxes here constituted a liability which could not be released by an act of the Legislature. VERNON'S ANN.TEX.CONST. art. III, § 55. We find that § 11.433 is unconstitutional because it operates to release or extinguish liabilities owed to the County. Were the Appraisal District to approve an exemption for real property, the exemption would necessarily

call for the release or extinguishment of the tax liability and the tax lien, contrary to the express prohibition in article III, section 55. We sustain the County's point of error.

Finding section 11.433 of the Texas Property Tax Code unconstitutional, we REVERSE the trial court's judgment and RENDER judgment that the Church take nothing.[4]

---

3. During the Great Depression, art. III, § 55 was amended to allow the release of delinquent taxes due for at least ten years. Further, art. VIII, § 10 of the Texas Constitution allows the legislature to release a tax obligation in a time of "great public calamity."

4. Because it is unnecessary to the disposition of this appeal, we do not address the County's alternate argument that the tax provision violates article I, section 16 of the Texas Constitution. TEX.R.APP.P. 90(a).